UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREGORY R. SCHWARTZ,

                              Plaintiff,

         v.

MIDDLETOWN CITY SCHOOL
DISTRICT, *and* RICHARD DELMORO,

                              Defendants.

---

No. 23-CV-1248 (KMK)

OPINION & ORDER

Appearances:

Gregory R. Schwartz
Sarasota, FL
*Pro se Plaintiff*

Howard M. Miller, Esq.
Jacqueline Giordano, Esq.
Bond, Schoeneck & King, PLLC
Garden City, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Gregory R. Schwartz ("Plaintiff"), proceeding pro se, brings this Action against

the Middletown City School District (the "District") and its former superintendent Richard

DelMoro ("DelMoro"; collectively, "Defendants"), alleging discrimination based on Plaintiff's

disability in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12132,

et seq., and the New York Human Rights Law ("NYSHRL"), New York Executive Law § 296.

(*See generally* Am. Compl. (Dkt. No. 9).)  Before the Court is Defendants' Motion To Dismiss.

(*See* Not. of Mot. (Dkt. No. 15).)  For the following reasons, Defendants' Motion is granted in

part and denied in part.

I.  Background

A.  Factual Background

The following facts come from the Amended Complaint and are assumed true for the purposes of this Motion.

In 2019, Plaintiff was employed as a tenured social studies teacher with the Middletown City School District (the "District").  (*See* Am. Compl. ¶ 1.)[1]  He alleges that, since 2012, he has suffered from a disability related to a heart condition.  (*Id*. ¶ 3.)  That disability apparently did not affect his ability to teach, at least until the COVID-19 Pandemic.

Middletown public schools closed in March 2020, causing Plaintiff to teach remotely for the rest of the 2019-2020 school year.  (*Id*. ¶ 4.)  When the 2020-21 school year rolled around, Plaintiff believed that his heart condition would inhibit his ability to teach in-person, so he asked the District for a remote teaching accommodation.  (*Id*. ¶ 5.)  He submitted that request on August 3, 2020, after which he supplemented with a doctor's note explaining that it would be too risky to return in person given his heart condition.  (*See id*. ¶¶ 7, 20.)[2]

On August 14, 2020, the District informed Plaintiff that the Superintendent (Defendant DelMoro), denied his request.  (*Id*. ¶ 8.)  The District explained that it did not have telework accommodations available and asked Plaintiff to either report to work or take unpaid leave. (*Id*.)[3]  The District also informed Plaintiff that he would not be able to use his accrued sick or leave time to offset a portion of his unpaid leave.  (*Id*. ¶ 10.)

---

[1] The bulk of Plaintiff's allegations appear in an "[a]ddendum" attached to his completed amended complaint form.  (*See* Am. Compl. 8.)  The paragraph citations throughout this Opinion refer to the paragraphs in that addendum.

[2] There are two paragraphs numbered 20; the Court here refers to the second one.

[3] Defendants state in an affidavit that they also suggested alternative accommodations including more personal protective equipment ("PPE"), or an assignment to a classroom with

Through September 2020, Plaintiff continued to go back and forth with the District.

Specifically, he made several suggestions for remote accommodations including teaching

students out on medical leave and writing curricula.  (*Id.* ¶¶ 11–12.)  In his Opposition, Plaintiff

states that at least two teachers with his same license had such positions, which he terms a

"Teacher [o]n Special Assignment," or TOSA.  (Pl's Mem. 13.)[4]  The District, however, rejected

those suggestions and placed Plaintiff on unpaid leave.  (*See* Am. Compl. 11.)

On November 4, 2020, Plaintiff filed a charge with the Equal Employment Opportunity

Commission ("EEOC") alleging a failure to accommodate his disability.  (*Id.* ¶ 13.)  The

resulting EEOC proceeding led to a mediation between Plaintiff and the District, scheduled for

January 2021.  On January 6, 2021, a week before the mediation, the District reached out to

Plaintiff with an offer to teach remotely through June 2021, the end of the spring semester.  (*Id.* ¶

17.)  Plaintiff, however, declined that offer because it would have reduced his average yearly

earnings and therefore could have reduced his yearly pension payouts.  (*Id.* ¶ 18.)

In September 2021, Plaintiff requested and accepted an unpaid leave of absence for the

2021-22 school year after the District did not offer a remote accommodation.  (*Id.* ¶ 20.)[5]  He

---

better ventilation.  (*See* Aff. of Jacqueline Giordano ("Giordano Aff"), Ex. A ("Accommodation
Ltr.") 1 (Dkt. No. 16).)  But even if the Court could consider that document, it is not clear
whether Defendants actually offered Plaintiff those accommodations.

[4] Courts in pro se cases routinely consider "new facts raised in opposition papers to the
extent that they are consistent with the complaint."  *Davila v. Lang*, 343 F. Supp. 3d 254, 267
(S.D.N.Y. 2018); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district
court deciding a motion to dismiss may consider factual allegations made by a pro se party in his
papers opposing the motion." (italics omitted)); *Brooks v. Jackson*, No. 11-CV-6627, 2013 WL
5339151, at *3 (S.D.N.Y. Sept. 23, 2013) ("[B]ecause a pro se plaintiff's allegations must be
construed liberally, it is appropriate for a court to consider factual allegations made in a pro se
plaintiff's opposition memorandum, as long as the allegations are consistent with the
complaint.").

[5] It is unclear whether Plaintiff requested a remote accommodation for the 2021-22
school year.

then resigned in September 2022.  (*Id.* ¶ 21.)  Finally, the EEOC closed Plaintiff's case on

November 15, 2022, and issued a right-to-sue letter.  (*Id.* ¶ 22.)

### B.  Procedural History

Plaintiff commenced this Action on February 10, 2023.  (*See* Compl. (Dkt. No. 1).)  On

March 23, 2023, Defendants filed a pre-motion letter in anticipation of moving to dismiss.  (Dkt.

No. 6.)  Plaintiff responded requesting an opportunity to amend, (Dkt. No. 7), which the Court

granted, (*see* Endorsed Ltr. (Dkt. No. 8)).

Plaintiff filed the Amended Complaint on April 14, 2023, (Am. Compl.), and Defendants

renewed their request to file a motion to dismiss on April 20, 2023, (Dkt. No. 10).  In lieu of a

pre-motion conference, the Court adopted a briefing schedule.  (*See* Order (Dkt. No. 11).)  After

an extension, (Dkt. No. 14), Defendants filed the instant Motion on June 12, 2023.  (Not. of

Mot.; Mem. of Law in Supp. of Mot. ("Defs' Mem.") (Dkt. No. 17); Giordano Aff.)  Plaintiff

filed his Opposition on July 13, 2023, (Pl's Mem. of Law In Opp. to Mot. To Dismiss ("Pl's

Mem.") (Dkt. No. 18)), and Defendants filed their Reply on July 26, 2023, (Reply Mem. of Law

("Defs' Reply") (Dkt. No. 19)).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of

[its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil

Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint

suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id*. at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id*. at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id*.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Protection Resources, Inc*., 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank*

*of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  However, when the complaint is filed by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)  (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), and "documents either in [the plaintiff's] possession or of which [the] plaintiff[ ] had knowledge and relied on in bringing suit," *Chambers*, 282 F.3d at 153 (quotation marks omitted).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted).[6]  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*,

_____

[6] Plaintiff states that he "received legal assistance to draft [his] opposition."  (Pl's Mem. 5 n.1.)  And some degree of assistance is evident in the format and style of Plaintiff's submission. Although pro se litigants are due special solicitude, "the appropriate degree of special solicitude is not identical with regard to all pro se litigants."  *See Cohen Lans LLP v. Naseman*, No. 14-CV-4045, 2017 WL 1929587, at *1 (S.D.N.Y. May 10, 2017) (italics omitted) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010)).  "The degree of solicitude may be lessened where the particular pro se litigant is experienced in litigation," with the "ultimate extension of this reasoning" being "that a lawyer representing himself *ordinarily* receives no such solicitude at all."  *Id*. (quotation marks omitted); *accord Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 188 (S.D.N.Y. 2018).

Out of an abundance caution, the Court applies here the special solicitude pro se plaintiffs are typically owed.  However, Plaintiff is on notice that if he continues to receive legal assistance, the Court will hold his submissions to a higher standard closer to that of a counseled party.  Additionally, if Plaintiff is in fact being represented by a lawyer, that individual should enter an appearance on the docket so Plaintiff can obtain the full benefit of their representation.

517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

    B.  Analysis

Plaintiff alleges claims for failure to accommodate and discrimination under the ADA and NYSHRL.  (*See generally* Am. Compl.)  Up front, the Court notes—and Plaintiff concedes—that there is no individual liability under the ADA.  *See Bonds v. Cnty. of Westchester*, No. 19-CV-1712, 2020 WL 4347704, at *7 n.6 (S.D.N.Y. July 28, 2020) (citing *Perros v. County of Nassau*, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017) (explaining that "it is well-established that there is no individual liability under the ADA or the Rehabilitation Act, whether the individual is sued in their official or individual capacity" (citations omitted))).  (*See also* Pl's Mem. 18 ("I do not dispute that individually named defendants are not liable under the ADA or the Rehabilitation Act . . . .").)  Plaintiff's ADA claim against Defendant DelMoro is therefore dismissed.

    1.  ADA Failure to Accommodate

An employer violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless those accommodations "would impose an undue hardship."  42 U.S.C. § 12112(b)(5)(A).  To make out a prima facie failure-to-accommodate claim, the plaintiff must establish that: "(1) [his] employer is subject to the ADA; (2) []he was disabled within the meaning of the ADA; (3) []he was otherwise qualified to perform the essential functions of [his] job, with or without reasonable accommodation; and (4) the employer refused to make such accommodations."  *McKenna v. Santander Inv. Sec., Inc.*, No. 21-CV-941, 2022 WL 2986588, at *7 (S.D.N.Y. July 28, 2022) (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020)); *accord Crosby v. Stew Leonard's Yonkers LLC*, --- F. Spp. 3d ---, 2023 WL 6318524, at *8 (S.D.N.Y. Sept. 28, 2023).

7

"Once [the] plaintiff [has] satisfied his burden of 'production and persuasion as to the existence of an accommodation that is facially reasonable,' the burden 'shifts to the defendant to rebut the reasonableness of the proposed accommodation,' which 'is in essence equivalent to the burden of showing, as an affirmative defense, that the proposed accommodation would cause the defendant to suffer an undue hardship.'" *Frilando v. N.Y.C. Transit Auth.*, 463 F. Supp. 3d 501, 514 (S.D.N.Y. 2020) (quoting *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 76 (2d Cir. 2016)).  The NYSHRL, which governs Plaintiff's state-law claims, is "interpreted coextensively" with the ADA.  *See Williams v. MTA Bus Co.*, 44 F.4th 115, 124 (2d Cir. 2022); *see also Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 76 (2d Cir. 2019) ("NYSHRL claims are analyzed as ADA claims."); *McKenna*, 2022 WL 2986588, at *7 ("Claims under the NYSHRL for a failure to accommodate are governed by the same legal standards as federal ADA claims." (citing *Fox*)).

Defendants appear to concede—for the purposes of this Motion—that (1) the District is subject to the ADA and (2) that Plaintiff is disabled.  (*See generally* Defs' Mem.)  They argue instead that (1) Plaintiff, who was unable to work in-person, could not perform an essential function of his job with or without reasonable accommodation, (Defs' Mem. 5–9); (2) that his claim is barred because he rejected a proposed reasonable accommodation, (*id*. at 7), and (3) that placing Plaintiff on unpaid leave was reasonable as a matter of law, (*id*. at 7–8).  The Court considers each issue in turn.

### a.  Essential Function

Defendants first contend that Plaintiff's in-person limitations prevented him from performing an essential function of teaching: supervising students.  (Defs' Mem. 5–6.)

The ADA does not define the term "essential function[]," but EEOC regulations indicate that the term "encompasses 'the fundamental job duties of the employment position.'" *McBride v. BIC Consumer Products Mfg. Co.*, 583 F.3d 92, 98 (2d Cir. 2009) (quoting 29 C.F.R.

§ 1630.2(n)(1)).  While courts give "considerable deference to an employer's determination as to what functions are essential," *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013), what that phrase means in any individual case "depends on the totality of the circumstances," *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004), and requires a "fact intensive" analysis, *Lavender v. Verizon New York Inc.*, No. 17-CV-6687, 2023 WL 1863245, at *16 (E.D.N.Y. Feb. 9, 2023) (citing *Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 127 (E.D.N.Y. 2014)).[7]  For that reason, "the nature of a job's essential functions" is often "ill-suited for resolution on a motion to dismiss."  *See Crosby*, 2023 WL 6318524, at *11 (quoting *Miller v. Kendall*, No. 14-CV-393, 2016 WL 4472748, at *2 (W.D.N.Y. Aug. 25, 2016)); *see also McMillan*, 711 F.3d at 126 (stating this inquiry calls for "a penetrating factual analysis").  However, the plaintiff still bears the initial "burden of showing that '[an] accommodation exists that permits [him] to perform the job's essential functions.'"  *Schneider v. Wal-Mart Stores, Inc.*, No. 16-CV-2010, 2019 WL 294309, at *6 (S.D.N.Y. Jan. 23, 2019) (quoting *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)).

Plaintiff has carried that burden at this early stage.  He begins by stating that he is a qualified teacher, and that he was able to effectively teach remotely during the 2019-20 school year—a period when his school was closed due to the COVID-19 pandemic.  (Am. Compl. ¶¶ 1–

---

[7] According to EEOC guidance, evidence of whether a particular function is essential includes but is not limited to:

> (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

2, 4.)  He notes teachers returned on a "hybrid" basis in the 2020-21 school year, which

presumably involved some in-person and some remote instruction.  (Pl's Mem. 13.)

Recognizing that being a remote *classroom* teacher may have still proven difficult, Plaintiff

alleges that he could have fulfilled his teaching duties remotely by writing curricula, teaching

students who themselves had remote learning arrangements, or providing resources for remote

learners.  (Am. Compl. ¶¶ 11–12.)  In his opposition, Plaintiff also states that "at the time"

(presumably of his September 2020 accommodation request), there were at least two teachers

with such positions who had the same teaching license as he did.  (Pl's Mem. 13).  And crucially,

after initially rejecting that arrangement, the District offered Plaintiff a remote working

accommodation in January 2021 for the remainder of the school year.  (Am. Compl. ¶ 17.)

Liberally construed, Plaintiff alleges that the essential functions of being a teacher encompass a

variety of tasks, including ones that can be performed remotely, and that positions exited in

which he could perform those functions.

Defendants respond that any remote arrangement would render Plaintiff unable to

supervise students when they came to class in person, which is essential to being a teacher.

(Defs' Reply 1–2.)  But Defendants provide next-to-no authority to establish that proposition as a

matter of law at the pleading stage.  In fact, even when appearing in-person *seems* like a job

requirement, the Second Circuit has cautioned that "[p]hysical presence . . . is not, as a matter of

law, an essential function," absent "a fact-specific inquiry" into the particular position.

*McMillan*, 711 F.3d at 126; *see also Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 140 (2d

Cir. 1995) (directing courts to avoid "unthinking reliance on intuition about the methods by

which jobs are to be performed").  Perhaps for that reason, nearly all the cases Defendants cite

concluding that physical presence *is* an essential function were decided at summary judgment,

after a searching factual inquiry.  *See Thomas v. Bridgeport Bd. of Educ.*, No. 20-CV-1487, 2022 WL 3646175, at *4 (D. Conn. Aug. 24, 2022) (granting summary judgment to defendant because "in-person instruction [was] an essential function of [the plaintiff's] job as a high school Spanish teacher"); *Matos v. DeVos*, 317 F. Supp. 3d 489, 500 (D.D.C. 2018) (granting summary judgment plaintiff's duties "could not be adequately performed away from the office"), *aff'd*, No. 18-5281, 2019 WL 2563721 (D.C. Cir. June 3, 2019); *Holmes v. Fulton Cnty. Sch. Dist.*, No. 06-CV-2556, 2007 WL 9650147, at *38 (N.D. Ga. Dec. 24, 2007) (recommending that district court grant summary judgement for defendant because "punctuality is an essential function" of the plaintiff's teaching job), *report and recommendation adopted*, 2008 WL 113377674 (N.D. Ga. Mar. 3, 2008); *cf. Ahles v. Yellen*, No. 20-CV-951, 2023 WL 3645486, at *5 (W.D.N.Y. May 25, 2023) (granting summary judgment for defendant because plaintiff could not perform job functions even if she was allowed to telework).  While these cases suggest Plaintiff may face an uphill battle in later phases of this case, they do not support Defendants' position at this stage.

The one motion-to-dismiss case Defendants cite reinforces Plaintiff's allegations.  In *Stanley v. City University of New York*, No. 18-CV-4844, 2023 WL 2714181, at *20 (S.D.N.Y. Mar. 30, 2023), Judge Engelmayer examined a similar situation involving a CUNY maintenance supervisor returning to work after the pandemic.  Dismissal was appropriate there because the pleadings were "devoid of factual averments" supporting the allegation that the supervisor "could entirely perform his duties in that role remotely."  *Id.*  *Stanley* contrasted those threadbare allegations with a different, adequately plead, case where the plaintiff "emphasiz[ed] that the essential functions of the job could be completed from home" and that, "at the time he sought an accommodation, there were two vacant positions to which he could have been reassigned."  *Id.* (quoting *Coleman v. N. Y. C. Dep't of Health & Mental Hygiene*, No. 20-CV-10503, 2022 WL

704304, at *4 (S.D.N.Y. Mar. 9, 2022)).  Plaintiff similarly alleges that he could perform

teaching functions from home and that there was a position that he could have been, and

ultimately was, offered.  (*See* Am. Compl. ¶¶ 11–12, 17.)

Moreover, even assuming physical presence is essential for some teachers, Defendants

have not applied their argument to the circumstances alleged here.  Defendants proceed on the

assumption that Plaintiff wanted to teach his in-person social studies class remotely, which they

argue would have been unreasonable and unduly burdensome.  (*See* Defs' Mem. 6–7.)  But they

nowhere address Plaintiff's allegations that he could teach remotely in a capacity that did *not*

require in-person supervision.  (*See generally* Defs' Reply.)  Similarly, their undue hardship

argument relies on having to hire "another staff member" to be present while Plaintiff teaches

from home.  (Defs' Mem. 9.)  Although the District need not "hir[e] two employees to perform

the job of one," *see Hunt-Watts*, 43 F. Supp. 3d at 134, that hardship may not be required if

Plaintiff does not teach an in-person class.  Of course, discovery may reveal that a remote

assignment fell outside the scope of Plaintiff's job as a social studies teacher, or that no special

assignment positions were available at the time of Plaintiff's September 2020 request.  *See*

*Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 187 (2d Cir. 2006) ("[T]he ADA does not require

creating a new position for a disabled employee"); *see also Williams v. Geiger*, 447 F. Supp. 3d

68, 84 (S.D.N.Y. 2020) (same); *Batlidze v. Harris Beach L.L.P.*, No. 05-CV-86, 2008 WL

2009385, at *5 (S.D.N.Y. May 8, 2008) (granting summary judgment to employer where

plaintiff failed to offer evidence showing her requested position was available).  But these are

issues for summary judgment.  At this stage, Plaintiff has adequately alleged that he could have

performed the essential functions of his job with a reasonable accommodation.

b.  Reasonableness of Unpaid Leave

Defendants next argue that the accommodation they offered—unpaid leave—was reasonable.  (Defs' Mem. 7–8.)  The "reasonableness of an employer's accommodation is a 'fact specific' question that often must be resolved by a factfinder."  *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996)).  In the summary judgment context, however, courts have held that the employer is entitled to judgment as a matter of law if "on the undisputed record, the existing accommodation is plainly reasonable."  *Nikolakopoulos v. Macy's Inc.*, No. 20-CV-1641, 2022 WL 3903595, at *18 (S.D.N.Y. Aug. 30, 2022) (internal quotation marks omitted) (quoting *Norman v. NYU Langone Health Sys*., No. 20-3624, 2021 WL 5986999, at *4 (2d Cir. Dec. 17, 2021) (summary order)); *accord Noll*, 787 F.3d at 94.  "A reasonable accommodation is one that 'enable[s] an individual with a disability who is qualified to perform the essential functions of [his] position . . . [or] to enjoy equal benefits and privileges of employment.'"  *Noll*, 787 F.3d at 94 (quoting 29 C.F.R. §§ 1630.2(o)(1)(ii), (iii)).  The accommodation must simply be "effective" under the circumstances, employers need not provide "the very accommodation most strongly preferred by the employee."  *Id*. (citing, inter alia, *US Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002) ("An ineffective 'modification' or 'adjustment' will not accommodate a disabled individual's limitations.")).

It is unclear whether the "plainly reasonable" standard applies at the pleading stage, and the cases cited by Defendants do not suggest that it does.  *See, e.g.*, *McNamara v. Tourneau, Inc*., 496 F. Supp. 2d 366, 376 (S.D.N.Y. 2007) (examining reasonableness of unpaid leave at summary judgment stage), *aff'd*, 326 F. App'x 68 (2d Cir. 2009) (summary order).  Regardless, the Court cannot say, based on Plaintiff's pleadings, that Defendants' offer of unpaid leave is reasonable as a matter of law.  The Second Circuit has noted, albeit in a summary order, that it

has not answered the question of "whether a school-year-long unpaid leave of absence can constitute a reasonable accommodation under the ADA." *See Torres v. N.Y.C. Dep't of Educ.*, No. 21-1679, 2022 WL 16954360, at *2 n.2 (2d Cir. Nov. 16, 2022) (summary order). And it has not clearly articulated when, if ever, unpaid leave may be reasonable in other circumstances. *See Bernheim v. N.Y.C. Dep't of Educ.*, No. 19-CV-9723, 2021 WL 2619706, at *12 (S.D.N.Y. June 25, 2021) (collecting cases), *report and recommendation adopted*, 2021 WL 4198126 (S.D.N.Y. Sept. 15, 2021). Indeed, the Circuit has noted that unpaid leave "as a reasonable accommodation presents a troublesome problem . . . because of the oxymoronic anomaly it harbors—the idea that allowing a disabled employee to leave a job allows him to perform that job's functions . . . [and] also because of the daunting challenge of line drawing it presents." *Graves*, 457 F.3d at 185 n.5 (internal quotation marks omitted). Although courts in this District have taken up that challenge and have occasionally approved "intermittent leave" accommodations, *see Bernheim*, 2021 WL 2619706, at *12 (collecting cases); *see also Graves*, 457 F.3d at 185 n.5 (noting other circuits and the EEOC have concluded unpaid leave may be reasonable "in some circumstances"), it is not appropriate for the Court to do so at this stage, *see Frilando*, 463 F. Supp. 3d at 515 (noting the reasonableness of employer accommodations is generally reserved for a factfinder). [8]

---

[8] Plaintiff alleges that he requested and obtained unpaid leave for the 2021-22 school year, although he notes that the District "did not offer to accommodate [him] with any remote teaching for that school year." (Am. Compl. ¶ 20 (referring the second paragraph numbered "20").) If Plaintiff did *not* request a remote accommodation for that year, the fact that he *did* request unpaid leave may be relevant to reasonableness at summary judgment. *See Brown v. N.Y.C. Dep't of Educ.*, No. 20-CV-2424, 2022 WL 4364600, at *3 (S.D.N.Y. Sept. 21, 2022) (noting that generally "a plaintiff cannot establish a failure to provide a reasonable accommodation if the [requested] accommodation was in fact provided"); *see also Falchenberg v. N.Y.C. Dep't of Educ.*, 375 F. Supp. 2d 344, 348 (S.D.N.Y. 2005) ("[A]n employee cannot hold an employer liable for failing to provide an accommodation that the employee has not requested in the first place." (quotation marks omitted)).

c.  Plaintiff's Rejection of Remote Accommodations

In reply, Defendants argue that Plaintiff's claim is barred because he turned down the "accommodation that he previously requested."  (Defs' Reply 3.)  The timeline here is important. Plaintiff alleges that he initially requested remote accommodations in August and September 2020, which the District rejected that October.  (Am. Compl. ¶¶ 9–12.)  Months later, in January 2021, the District offered, and Plaintiff rejected, a remote accommodation which appeared to match Plaintiff's initial request.  (*Id.* ¶ 17; *see also* Defs' Mem. 7.)

The cases cited by Defendants quote EEOC regulations providing that:

[I]f [an] individual rejects a reasonable accommodation . . . that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered [a] qualified [individual with a disability].

29 C.F.R. § 1630.9(d); *see also E.E.O.C. v. Yellow Freight Sys., Inc.*, No. 98-CV-2270, 2002 WL 31011859, at *21 (S.D.N.Y. Sept. 9, 2002) (same); *Dockery v. City of Chattanooga*, 134 F.3d 370 (6th Cir. 1997) ("[A]n individual who rejects a reasonable accommodation . . . cannot prevail under the ADA.").  As with the previous argument, the reasonableness of Defendants' offered accommodation is "a 'fact-specific' question that often must be resolved by a fact finder," save for situations where the offer is plainly reasonable.  *Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 420 (S.D.N.Y. 2018) (quoting *Noll*, 787 F.3d at 94).  While Plaintiff did appear to reject an offer similar to his initial request, the Court finds that dismissal is inappropriate for two reasons.[9]

---

[9] The Parties' various requests and offers are part of the "interactive process" envisioned by the ADA "by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."  *Malzberg v. New York Univ.*, No. 19-CV-10048, 2022 WL 889240, at *14 (S.D.N.Y. Mar. 25, 2022) (quoting *Noll*, 787 F.3d at 98).  Defendants suggest that, in addition to turning down their offer, Plaintiff "withdr[e]w from the interactive process."  (Defs' Reply 3–4.)  Generally, "an employee who withdraws form the interactive

First, Defendants have not demonstrated that the remote accommodation was "plainly reasonable" when it was offered in January 2021.  Although not discussed by the Parties, the Court notes that the reasonableness of an accommodation is determined at the time of the request or offer.  *See Laguerre v. Nat'l Grid USA*, No. 20-3901, 2022 WL 728819, at *5 (2d Cir. Mar. 11, 2022) (summary order) (indicating "reasonableness" is determined "at the time of [the plaintiff's accommodation] request").  Therefore, Plaintiff's allegations about reasonable accommodations at the beginning of the school year do not necessarily establish the reasonableness of the District's January offer.  And Plaintiff alleges a pertinent difference:  He declined the mid-year offer because it would have "negative[ly] impact[ed]" his retirement pension by bringing down his average yearly earnings.  (*See* Am. Compl. ¶ 18.)  The Court construes this as a reason why the offer would not allow Plaintiff to "enjoy the equal benefits and privileges of employment," as required for "reasonable" employer accommodations.  *See Noll*, 787 F.3d at 94 (quoting 29 C.F.R. §§ 1630.2(o)(1)(ii), (iii)); *see also Garces v. N.Y.C. Hous. Auth.*, No. 16-CV-2811, 2017 WL 3025888, at *5 (S.D.N.Y. July 17, 2017) (same).  Defendants recognize this argument, (*see* Defs' Reply 3), but do not respond to it.  Again, and in fairness to Defendants, the Court harbors some doubts.  For instance, Plaintiff does not explain why a half-year of work would have harmed his average earnings, while unpaid leave would not.  But for now, the Court must take Plaintiff's denial-of-benefits allegation as true.

---

process cannot later allege failure to accommodate." *Id.* (quoting *Noel v. BNY-Mellon Corp.*, 2011 WL 4633884, at *2 (S.D.N.Y. Oct. 4, 2011)).  But "an employee's withdrawal . . . may be excused where the defendant's statements effectively indicated that the defendant had no intention of engaging in the interactive process in good faith . . . ." *Id.* (quotation marks omitted).  Relevant here, Plaintiff alleges that Defendants "withdrew from [the Parties'] EEOC mediation" before he rejected their remote work offer, which raises a fact dispute about Defendants' continuing intent to engage with him in good faith.  (*See* Am. Compl. ¶ 20 (referring to the first paragraph numbered "20").)

Second, to the extent the January 2021 offer was reasonable, the Court does not interpret § 1630.9(d) to bar Plaintiff's *entire* claim.  At most, it would cut off liability after Plaintiff rejected the offer.  Section 1630.9(d) is not clear about temporal reach, but at least one court has interpreted it to mean that an individual "will *no longer* be considered a qualified individual with a disability" once they reject a reasonable accommodation.  *See Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 457 (6th Cir. 2004) (emphasis added).  It would make little sense for an employer's later offer to reach back in time and extinguish claims based on a prior denial of accommodations.  Courts generally view each accommodation decision as a "discrete act," with a claim accruing "on the date the accommodation request is rejected." *Castiblanco v. Am. Airlines, Inc.*, No. 17-CV-5639, 2019 WL 4751880, at *8 (E.D.N.Y. Sept. 29, 2019) (citing *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir. 2003) ("[A]n employer's rejection of an employee's proposed accommodation . . . is the sort of discrete act that must be the subject of a complaint to the EEOC within 300 days." (internal quotation marks omitted))). That construction would also run counter to decisions holding that employers may violate the ADA by unreasonably delaying requested accommodations, even if they ultimately provide them.  *See Brown*, 2022 WL 4364600, at *3 (adopting report and recommendation); *see also Logan v. Matveevskii*, 57 F. Supp. 3d 234, 271 (S.D.N.Y. 2014) ("[C]ourts have found plaintiffs' requests for reasonable accommodations to have been constructively denied after delays approximating four months." (collecting cases)).  Plaintiff's claims are therefore not barred by his rejection of the January 2021 offer.

### 2.  ADA Discrimination

In addition to his failure to accommodate claim, Plaintiff also alleges that he was a "victim of disability discrimination" because Defendants refused to let him use any accrued benefits during his unpaid leave.  (Am. Compl. ¶ 23.)  Defendants say nothing about this

additional claim in their papers.  (*See generally* Defs' Mem.; Defs' Reply.)  And although Plaintiff's Opposition is largely focused on his failure to accommodate claim, the Court is obliged to construe the Amended Complaint to raise the "strongest claims that it suggests."  *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (alterations adopted).

"To establish a prima facie case of disability discrimination under the ADA or NYSHRL, a plaintiff must show that (1) the defendant is a covered employer; (2) the plaintiff suffered from, or was regarded as suffering from, a disability within the meaning of the statute; (3) the plaintiff was qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (4) []he suffered an adverse employment action because of [his] disability or perceived disability."  *Dobbs v. NYU Langone Medical Ctr.*, No. 18-CV-1285, 2021 WL 1177767, at *5 (S.D.N.Y. Mar. 29, 2021) (italics omitted) (citing *Fox*, 918 F.3d at 71; and *Jacobs v. N.Y.C. Dep't of Educ.*, 768 F. App'x 86, 87 (2d Cir. 2019) (summary order)).  A plaintiff must plead facts plausibly supporting that a "minimal inference of discriminatory motivation" existed in connection with the adverse employment action.  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21–22 (2d Cir. 2015) (summary order) (applying the "minimal inference" standard to ADA discrimination claims).  Without the benefit of a motion to dismiss a claim, the Court reviews only for frivolousness.  *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (holding "district courts may dismiss a frivolous complaint sua sponte even when[, as here,] the plaintiff has paid the required filing fee").

As above, Defendants appear to concede elements (1) and (2), and Plaintiff has adequately alleged element (3), *see supra* § II.A.1.  Accordingly, the only questions are whether Defendants' decision to place Plaintiff on unpaid leave without the ability to use his accrued

benefits constitutes an "adverse employment action," and whether Plaintiff has alleged a discriminatory motive.  The adverse employment question is contested, but Plaintiff's claim is at least plausible.  Courts in the Second Circuit have recognized that "[i]n the unique context of the COVID-19 pandemic, denying an employee's request to work from home [is] arguably not [just] a mere inconvenience, particularly when other employees were allowed to do so."  *Gayles v. Roswell Park Cancer Inst. Corp.*, No. 22-CV-00750, 2023 WL 6304020, at *5 (W.D.N.Y. Sept. 28, 2023) (quotation marks and citation omitted); *see also id.* at *5 n.4 (collecting cases from other circuits finding adverse actions in similar circumstances); *see also Ham v. ICL Bronx House Inst. for Cmty. Living*, 2021 WL 2651945, at *3 (S.D.N.Y. June 28, 2021) (stating that "[an] adverse employment action, [] could include [a plaintiff] being denied permission to work from home[,]" but granting motion to dismiss on other grounds).  Additionally, "courts have found unpaid leave [itself] to be an adverse employment action" under certain circumstances. *See Jamil v. Sessions*, No. 14-CV-2355, 2017 WL 913601, at *8 (E.D.N.Y. Mar. 6, 2017).

While thin, there is also material in Plaintiff's papers that supports an inference of discrimination.  In addition to denying him benefits, Plaintiff suggests disparate treatment in that other teachers with his qualifications were allowed to work on special assignment even though his requests were denied.  *See B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016) (explaining that ADA discrimination "may take the form of disparate treatment").  Plaintiff may also have a claim on the theory that the District "offered him only employment that it believed he was substantially unable to perform."  *See Kopchik v. Town of East Fishkill*, 759 F. App'x 31, 38 (2d Cir. 2018) (summary order) (finding similar allegations "satisfy[ied] the minimal pleading threshold as to the causation element of [the plaintiff's] ADA and NYSHRL discrimination

claims"). Defendants may poke holes in this claim at summary judgment, but the Court finds it is not frivolous.

### 3. NYSHRL Claims

#### a. Timeliness

Defendants argue that that Plaintiff's NYSHRL claims are time barred. (Defs' Mem. 9–10.) Plaintiff recognizes that his claims fall outside the applicable one-year statute of limitations but contends that the limitations period was tolled from the filing of his EEOC complaint until the EEOC's disposition. (Pl's Mem. 18–19.) According to the Amended Complaint, the EEOC proceeding lasted from November 4, 2020, to November 15, 2022, (Am. Compl. ¶¶ 13, 22), which means that tolling would make Plaintiff's claims timely, (*see* Am. Compl. ¶ 5 (initial accommodation request submitted August 5, 2020); *see also* Compl. (Action commenced on February 10, 2023)). The availability of tolling here implicates an intra-district split, so some background is useful.[10]

NYSHRL claims are typically subject to a "three-year statute of limitations." *Nokaj v. N. E. Dental Mgmt., LLC*, No. 16-CV-3035, 2019 WL 634656, at *7 (S.D.N.Y. Feb. 14, 2019) (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("[C]laims under the NYSHRL . . . are time-barred unless filed within three years of the alleged discriminatory acts.")); *see also* N.Y.C.P.L.R. § 214 (stating "an action to recover damages for a personal injury" "must be commenced within three years"). But claims against school districts are subject to a special one-year limitations provision. *See Langella v. Mahopac Cent. Sch. Dist.*, No. 18-

---

[10] "[T]he doctrine of equitable tolling is not available in state causes of action in New York." *Jang Ho Choi v. Beautri Realty Corp.*, 22 N.Y.S.3d 431, 432 (App. Div. 2016); *Shared Commc'ns Servs. of ESR, Inc. v. Goldman, Sachs & Co.*, 832 N.Y.S.2d 32, 33 (App. Div. 2007) ("The doctrine of equitable tolling is generally applied to federal causes of action in New York."); *see also O'Hara v. Bayliner*, 679 N.E.2d 1049, 1054 (N.Y. 1997) (referring to tolling as an "exceptional Federal [ ] remedy."). The question is instead one of statutory construction.

CV-10023, 2020 WL 2836760, at *15 (S.D.N.Y. May 31, 2020); *see also* N.Y. Educ. Law §

3813(2-b) ("[N]o action . . . shall be commenced against any entity specified in subdivision one

of this section more than one year after the cause of action arose[.]"); *id*. § 3813(1) (specifying

"school district[s]" and "board[s] of education").  The New York Court of Appeals has

clarified—to the extent there was any uncertainty—that § 3813(2–b) overrides the general three-

year period for NYSHRL actions against school districts.  *Amorosi v. S. Colonie Indep. Cent.*

*Sch. Dist.*, 880 N.E.2d 6, 10 (N.Y. 2007).

Turning to tolling, the "overwhelming weight of authority . . . holds that the filing of a

charge with the EEOC tolls the statute of limitations" for "related claims under the NYSHRL."

*Franchitti v. Cognizant Tech. Sols. Corp*., No. 21-CV-2174, 2022 WL 2657171, at *8 (S.D.N.Y.

July 8, 2022) (collecting cases); *see also Nokaj*, 2019 WL 634656, at *7 (same); *Humphreys v.*

*N.Y.C. Health & Hosps. Corp.*, No. 16-CV-9707, 2018 WL 3849836, at *3 (S.D.N.Y. Aug. 10,

2018) ("Although the Second Circuit has not squarely addressed the question of whether the

filing and pendency of EEOC charges toll the statutes of limitations for NYSHRL . . . claims,

courts in this district routinely conclude that the three-year statute[ ] of limitations for such

claims are tolled during the period in which a complaint is pending before the EEOC.").

Although few opinions explain why tolling is appropriate, the rationale stems from two

interlocking New York Statutes.  Most important is New York Executive Law ("N.Y. Exec.

Law") § 297(9) which expressly stays NYSHRL suits about "unlawful discriminatory

practice[s]" while state administrative proceedings are pending.  *See id.; see also Pan Am. World*

*Airways, Inc. v. New York State Hum. Rts. Appeal Bd*., 463 N.E.2d 597, 600 (N.Y. 1984)

("Subdivision 9 of [§] 297 of the Executive Law provides a stay by prohibiting the

commencement of suit when a complaint has been filed with the [New York State] Division [of

Human Rights].").  Next up is Civil Practice Law § 204(a), which provides that if an action is "stayed by a court or a statutory prohibition," the "duration of the stay" does not count towards the applicable limitations period.  Putting two and two together, "the statute of limitations is tolled during the pendency of a complaint with the Division of Human Rights ["NYSDHR"] pursuant to CPLR 204(a)."  *Penman v. Pan Am. World Airways, Inc.*, 510 N.E.2d 803, 803 (N.Y. 1987); *see also Martinez-Tolentino v. Buffalo State Coll.*, 715 N.Y.S.2d 554, 555 (App. Div. 2000) (same).  Finally, "complaints filed with the EEOC are deemed constructively to be cross-filed with the NY[S]DHR, [meaning] the statute is also tolled during the pendency of a claim filed with the EEOC."  *Sundaram v. Brookhaven Nat. Lab'ys*, 424 F. Supp. 2d 545, 565 (E.D.N.Y. 2006) (citing *Lee v. Overseas Shipholding Group, Inc.*, No. 00-CV-9682, 2001 WL 849747, *8 (S.D.N.Y. July 30, 2001) (same) and *Martinez-Tolentino*, 715 N.Y.S.2d at 555 (same)); *see also Cameron v. N.Y.C. Dep't of Educ.*, No. 15-CV-9900, 2018 WL 1027710, at *11 (S.D.N.Y. Feb. 21, 2018) (collecting cases recognizing that "there exists a work-sharing agreement between the EEOC and the New York State Division of Human Rights, under which discriminatory practice claims filed with the EEOC are automatically cross-filed with the New York State Division of Human Rights").

That rationale suggests that the pendency of an EEOC proceeding against a school district, like other EEOC proceedings, does not count towards the applicable statute of limitations.  Although § 3813(2-b) sets out a distinct limitations *period*, it says nothing about what counts *towards* that period.  On that latter point, CPLR § 204(a) is quite clear: "the duration of [a] stay"—triggered by an EEOC filing—"is not part of the time within which the action must be commenced."

Nevertheless, courts in this Circuit have split about whether tolling is available for those claims. *Compare Langella*, 2020 WL 2836760, at \*15 (concluding that EEOC proceeding tolls one-year statute of limitations for claims against school districts), *Livingston v. Roosevelt Union Free Sch. Dist.*, No. 17-CV-4189, 2020 WL 1172642, at \*5 (E.D.N.Y. Jan. 15, 2020) (same), *adopted by*, 2020 WL 1166450 (E.D.N.Y. Mar. 11, 2020), *and Riccardo v. N.Y.C. Dep't of Educ.*, No. 16-CV-4891, 2016 WL 7106048, at \*6–7 (S.D.N.Y. Dec. 2, 2016) (same), *adopted sub nom.*, *United States v. N.Y.C. Dep't of Educ.*, 2017 WL 57854 (S.D.N.Y. Jan. 4, 2017), *with Ferraro v. Ramapo Central Sch. Dist.*, No. 17-CV-2039, 2017 WL 6343686, at \*3 (S.D.N.Y. Dec. 11, 2017) ("[T]he weight of the authority suggests that NYSHRL claims brought against school districts and boards pursuant to Education Law § 3813(2–b) are not tolled during [an EEOC proceeding]."), *Rajcoomar v. Bd. Of Educ.*, 2017 WL 980616, at \*9 (S.D.N.Y. Mar. 13, 2017) (same); *Cincotta v. Hempstead Union Free Sch. Dist.*, No. 15-CV-4821 2016 WL 4536873, at \*18 (E.D.N.Y. Aug. 30, 2016) (same); *Ayazi v. N.Y.C. Dep't of Educ.*, No. 08-CV-2456, 2012 WL 4503257, at \*8 (E.D.N.Y. Sept. 28, 2012) ("[C]laims against school districts . . . are not tolled by filings with the EEOC."),  *Smith v. Tuckahoe Union Free Sch. Dist.*, No. 03-CV-7951, 2009 WL 3170302, at \*11 n.9 (S.D.N.Y. Sept. 30, 2009) (same), *Field v. Tonawanda City Sch. Dist.*, 604 F. Supp. 2d 544, 579 n.26 (W.D.N.Y. 2009).

Most courts to reach the contrary conclusion rely on *Smith* and *Field*.[11]  Those cases largely fail to grapple with CPLR § 204(a) or the express stay provision, and instead present three propositions to support their conclusion: (1) that an EEOC charge does not toll the statute

---

[11] In *Smith*, the statute of limitations issue was waived, but the Court reached it anyway. *See Smith*, 2009 WL 3170302, at \*11 n.9 ("Smith has not argued that the filing of his EEOC charge tolled the statute of limitations under Education Law § 3813(2-b), and accordingly has waived this argument.").

of limitations for similar state *tort* claims; (2) that the New York legislature intended to "limit lawsuits against school districts" when it enacted § 3813(2-b); and (3) that § 3813(2-b)'s silence as to tolling prevents courts from imposing a tolling provision.  *See Smith*, 2009 WL 3170302, at *11 n.9; *see also Field*, 604 F. Supp. 2d at 579 n.26.  For their part, Defendants present these same arguments.  (*See* Defs' Mem. 9–10.)  The Court, however, respectfully disagrees with those points and the cases that rely on them.

First, since *Smith* and *Field* were decided, courts have held that state common-law and state statutory claims are distinct for tolling purposes.  *See, e.g.*, *Cincotta*, 2016 WL 4536873, at *18 (citing *Smith* and *Field*).  The distinction stems from caselaw holding that claims for intentional discrimination under 42 U.S.C. § 1981—and by extension intentional torts—are "separate from and independent of the more elaborate and time-consuming procedures" of employment discrimination statutes like Title VII and the ADA, due in part to issues about Congressional intent.  *See Castagno v. Luceno*, 744 F.3d 254, 258 (2d Cir. 2014); *see also Duran v. Jamaica Hosp.*, 216 F. Supp. 2d 63, 67 (E.D.N.Y. 2002) (quotation marks omitted) ("In intentional tort claims, the plaintiff seeks to be free from injury caused by another person, whereas in the discrimination claims, plaintiff is pursuing freedom from discrimination in the workplace.").  In contrast to that "alternate" context, "the presence of the [EEOC/NYSDHR] work-sharing agreement, . . . and [the] additional state law that tolls the statute of limitations when a complaint is filed with the [NYS]DHR"—the express stay provision—"furnishes clear proof of New York's intent that tolling should apply to claims brought under the NYSHRL."  *Nixon v. TWC Admin. LLC*, No. 16-CV-6456, 2017 WL 4712420, at *4 (S.D.N.Y. Sept. 27, 2017) (citing, inter alia, N.Y. Exec. Law § 297(9)); *cf. Cameron*, 2018 WL 1027710, at *12 (finding state tort cases "are inapposite" regarding tolling "under the [New York City Human

Rights Law]" and noting the "clear trend in this district" towards holding "that the statute of limitations on NYCHRL actions is tolled during the pendency of a complaint filed with the EEOC").

Second, § 3813(2-b) does not evidence legislative intent to the contrary. *Smith* relied on the New York Court of Appeals decision in *Amorosi* to conclude that "the clear intent of the New York legislature [was] to limit lawsuits against school districts" and that it therefore intended to displace applicable tolling provisions. *Smith*, 2009 WL 3170302, at *11 n.9. *Amorosi*, however, "is inapposite because tolling was not at issue in the case." *Riccardo*, 2016 WL 7106048 at *7. Indeed, as some of the more recent cases have recognized, *Amorosi* "merely confirmed that NYSHRL claims against school districts are subject to a one-year, rather than a three year, statute of limitations." *Livingston*, 2020 WL 1172642 at *5; *see also Amorosi*, 880 N.E.2d at 7 ("In this appeal we are asked to determine the statute of limitations applicable to a damages claim for illegal workplace discrimination brought under Executive Law § 296 against a school district."). Moreover, *Amorosi* contains no statement about a broad intent to limit lawsuits against school districts. When it mentions intent, *Amorosi* simply notes the legislatures clear intent *to implement a shorter limitations period*:

> Despite any provision for a longer statute of limitations . . . , the one-year limitation prescribed in Education Law § 3813(2–b) should govern discrimination claims against a school district. This is because the Legislature's intent is discernible from the unequivocal language of subdivision (2–b); we need not resort to rules of construction or consider the legislative history of either the Human Rights Law or Education Law § 3813 here.

*See Amorosi*, 880 N.E.2d at 10. More notable is the fact that *Amorosi*, in its hard look at the provision, said nothing about tolling. To infer anything else goes well beyond the "sole necessary determination" underlying that holding. *See In re McNamee, Lochner, Titus & Williams P.C. (Killeen)*, 700 N.Y.S.2d 525, 528 (App. Div. 1999).

Third, *Field* also noted that § 3813(2-b) was silent with respect to tolling and invoked the "general principle that . . . absent a clear legislative declaration that any tolling is permissible, the courts should be reluctant to imply one." *Field*, 604 F. Supp. 2d at 579 n.26. Defendants rely heavily on this point in reply, arguing that it must be "presumed that the Legislature intended not to include a tolling provision." (Defs' Reply 7.) But this argument rebounds on itself, as it entirely ignores N.Y. Exec. Law § 297(9)'s express stay provision. Far from the Court implying a tolling scheme, New York law *requires* tolling when the "commencement of an action" has been stayed by statute. *See* CPLR § 204(a); *see also Penman*, 510 N.E.2d at 803. Section § 3813(2-b)—which speaks only to the limitations period—does nothing to upset that scheme. New York legislated against the backdrop of those provisions when it enacted § 3813(2-b), making § 3813(2-b)'s silence powerful evidence of the legislature's intent to leave those tolling provisions alone. *See* 1996 Sess. Law News of N.Y. Ch. 474 (A. 11335) (enacting § 3813 in 1996); *see also Penman*, 510 N.E.2d at 803 (recognizing, in 1987, that a NYSDHR complaint tolls the statute of limitations). The Court therefore declines to dismiss Plaintiff's NYSHRL claim as time barred.

### b.  Notice

Finally, Defendants argue that the NYSHRL claims should be dismissed as to the "School Board" because that entity was not aware of any discriminatory conduct. (Defs' Mem. 10–11.)[12] For support Defendants rely on NYSHRL discrimination cases holding that "an employer cannot be held liable for an employee's discriminatory act unless the employer became

---

[12] The "School Board," (Defs' Mem. 10) and "Board of Education," (Defs' Reply 7), are not parties to this Action. (*See generally* Dkt.) Defendants may mean to argue that the School *District* cannot be on notice of discrimination unless the *Board* hears about it. But these distinctions appear nowhere in Defendants' papers.

a party to it by encouraging, condoning, or approving it." *Lyons v. Citi Trends, Inc.*, No. 21-CV-08365, 2023 WL 1821042, at *4 (S.D.N.Y. Feb. 8, 2023) (quotation marks omitted); *see also Totem Taxi, Inc. v. New York State Hum. Rts. Appeal Bd.*, 480 N.E.2d 1075, 1077 (N.Y. 1985) (noting that, for liability to attach, "the employer approved of, or acquiesced in, the employee's conduct"). But it is hard to understand this argument in the failure to accommodate context.

NYSHRL failure-to-accommodate claims are "analyzed as ADA claims," *Fox*, 918 F.3d at 76, and the ADA "imposes liability *on an employer* for 'not making reasonable accommodations to the known physical or mental limitations' of an employee," *Felix v. N.Y.C. Transit Authority*, 154 F. Supp. 2d 640, 656 (S.D.N.Y. 2001) (emphasis added) (quoting 42 U.S.C. § 12112(b)(5)(A)), *aff'd*, 324 F.3d 102 (2d Cir. 2003). To be sure, employers are only liable for "*known*" disabilities. *Id.* (emphasis in original). But the "general rule" is that an employee's accommodation request—for a qualifying disability—triggers the employer's duty to find a reasonable accommodation. *Id.*; *see also Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020) (holding employee's notice of a qualifying disability "triggers" the employer's "duty to engage the interactive accommodations process"). The subsequent rejection of a reasonable request, or failure to offer an accommodation, is the employer's own act or omission for which it is liable. Unlike Defendants' examples about isolated acts of discrimination, Plaintiff clearly alleges that he notified the District of his disability and that the District rejected his accommodation requests. (*See, e.g.*, Am. Compl. ¶¶ 9, 11.) Those allegations are more than sufficient to trigger the District's duties under the NYSHRL.[13] *See*

---

[13] For this reason, Defendant DelMoro may be individually liable to the extent he "aided and abetted" the District's failure to accommodate. *See* N.Y. Exec. Law § 296(6); *see also Murtha v. New York State Gaming Comm'n*, No. 17-CV-10040, 2019 WL 4450687, at *16 (S.D.N.Y. Sept. 17, 2019) (finding "individual [d]efendants can be held liable for failure to accommodate under the NYSHRL").

*Lewis v. Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289, 306 (S.D.N.Y. 2014) (finding adequate notice based on a plaintiff's allegation "that he directly informed [the defendant] of his disability and his need for a reasonable accommodation"); *see also Stern v. McDonough*, No. 5:18-CV-71, 2022 WL 4236298, at *5 (N.D.N.Y. Sept. 14, 2022) (stating that "[o]nce an employee has informed his employer of the need for accommodation, both parties are obliged to work together to fashion a reasonable accommodation"); *Daly v. Westchester Cnty. Bd. of Legislators*, No. 19-CV-04642, 2021 WL 229672, at *8 (S.D.N.Y. Jan. 22, 2021) (finding notice adequately alleged for Retaliation Act claim where the plaintiff informed his supervisor "as to [his] numerous health issues" and discussed his limitations with other senior staff).

III.  Conclusion

For the foregoing reasons, Defendants' Motion is granted in part and denied in part.

Specifically, Plaintiff's ADA claims against Defendant DelMoro are dismissed, but all his other

claims survive.  The Court will hold a status conference on April 8, 2024, at 12:00 PM.  The

Clerk of Court is respectfully directed to terminate the pending motion.  (Dkt. No. 15.)

SO ORDERED.

Dated:   March 25, 2024
         White Plains, New York

—————————————————————
     KENNETH M. KARAS
 United States District Judge