UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

GREGORY R. SCHWARTZ,

                        Plaintiff,               **DECISION AND ORDER**

        -against-                  23 Civ. 1248 (AEK)

MIDDLETOWN CITY SCHOOL DISTRICT
and RICHARD DELMORO, former
Superintendent of Middletown City
School District,

                        Defendants.
-------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

     Plaintiff Gregory R. Schwartz brings this action against Defendants Middletown City

School District (the "District") and former District Superintendent Richard DelMoro

(collectively, "Defendants"), alleging discrimination based on Plaintiff's disability in violation of

the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132, *et seq.*, the New York

Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296, and the Rehabilitation Act of 1973

("Rehabilitation Act"), 29 U.S.C §§ 701, *et seq.  See generally* ECF No. 9 ("Amended

Complaint" or "Am. Compl.").  Currently before the Court is Defendants' motion for summary

judgment.  ECF No. 39.  For the reasons that follow, Defendants' motion is GRANTED IN

PART AND DENIED IN PART.

---

[1] The parties consented to this Court's jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c) on July 1, 2024.  ECF No. 30.

# BACKGROUND

## I.    Factual Background

The following facts are undisputed unless otherwise noted and are taken from Defendants' Local Civil Rule 56.1 Statement, ECF No. 39-15 ("Defs.' 56.1 Statement"), Plaintiff's Response to Defendants' Local Civil Rule 56.1 Statement, ECF No. 42 at ¶¶ 1-62 ("Pl.'s 56.1 Resp."), Plaintiff's Rule 56.1 Counterstatement, ECF No. 42 at ¶¶ 63-84 ("Pl.'s 56.1 Statement"), Defendants' Response to Plaintiff's Rule 56.1 Counterstatement, ECF No. 48-1 ("Defs.' 56.1 Resp."), and the exhibits submitted by the parties.

### A.    Plaintiff's Work History, Accommodation Requests and Offers, and the End of His Employment with the District

Plaintiff began work as a social studies teacher in the District in September 2000; during the last five years of his employment in the District, from approximately 2017 until his resignation in 2022, including during the 2019-2020 school year, he was a social studies teacher at Twin Towers Middle School.  Pl.'s 56.1 Resp. ¶¶ 2, 3; Defs.' 56.1 Resp. ¶¶ 63, 64.  In March 2020, pursuant to a New York State mandate, the District closed its schools due to the COVID-19 pandemic and provided remote instruction starting shortly thereafter for the remainder of the school year.  Pl.'s 56.1 Resp. ¶ 5.  Plaintiff taught remotely from the beginning of the remote instruction period until June 2020.  Defs.' 56.1 Resp. ¶ 67.  Schools reopened and in-person instruction resumed in September 2020.  Pl.'s 56.1 Resp. ¶ 6.

Plaintiff has a disability related to a heart condition; specifically, he had a heart attack in May 2012, has seen a cardiologist since then, and suffers from heart disease, hypertension, and high blood pressure.  Defs.' 56.1 Resp. ¶¶ 65, 66; Pl.'s 56.1 Resp. ¶ 7.  In August 2020, Plaintiff requested a medical accommodation to be able to teach remotely for the 2020-2021 school year.  Pl.'s 56.1 Resp. ¶¶ 8, 11.  Rebecca Lloyd, the District's Director of Personnel, provided to

Plaintiff a Reasonable Accommodation Request Form to complete and submit to the District for consideration. *Id.* ¶ 9. Plaintiff completed and submitted the form; in the form he described his limitations as "chronic medical conditions," and stated that he would need an accommodation "until a vaccine or another way of preventing transmission of Covid virus is discovered and I am able to obtain it." *Id.* ¶ 10.

In response to the accommodation request, Lloyd sent Plaintiff a letter on August 14, 2020 asking that he specify the medical condition necessitating the accommodation. *Id.* ¶ 13. Plaintiff was also informed in that same letter that "[a]t this time as a teacher- working from home is not a reasonable accommodation for a teacher." *Id.* ¶ 14. As part of the August 14, 2020 letter, Lloyd offered Plaintiff alternative accommodations including (1) an unpaid leave of absence; (2) additional personal protective equipment ("PPE"); (3) additional disinfection materials to be used to clean surfaces more regularly; and (4) assignment when possible to a workspace or classroom with better ventilation. *Id.* ¶ 15. In response to Lloyd's August 14, 2020 letter, Plaintiff submitted another letter from his doctor which described his medical condition as "chronic medical conditions with heart disease, prior heart attack and hypertention [*sic*]"; the doctor requested that Plaintiff be permitted to teach remotely "until a vaccine or another way of preventing transmission is discovered." *Id.* ¶ 16.

The District's job description for a position as a teacher, revised as of December 2017, contains a section titled "ESSENTIAL DUTIES AND RESPONSIBILITIES," which lists 20 bullet points, including the obligation to "maintain good order and discipline amongst students under one's care and safeguarding their health and safety at all times." ECF No 39-1 (Affirmation of Jacqueline A. Giordano ("Giordano Aff.")) Ex. F (Creeden Deposition Transcript ("Creeden Tr.")) at 79:12-24 & Ex. C2 (capitalization in original); *see* Pl.'s 56.1 Resp.

¶ 17.[2]  At the start of the 2020-2021 school year, the District decided that it would not allow any

teachers to work remotely from home during that school year because the District was "worried

about students and . . . classroom management and for every teacher that didn't come in you still

needed a teacher in the classroom.."  Giordano Aff. Ex. G (Lloyd Deposition Transcript ("Lloyd

Tr.")) at 26:20-27:22; Pl.'s 56.1 Resp. ¶ 18.[3]  According to current District Superintendent Amy

Creeden,

> [t]eachers are responsible for supervising students and classroom
> management.  Teachers, especially at the middle school level, must
> be physically present in the classroom when students are present to
> ensure students are engaged, behaving, and not, for instance,
> cheating on an exam, on their cellphone or other device, or in
> possession of a weapon or drugs.  Physical presence is an essential
> function of the job of a classroom teacher in a K-12 setting.

ECF No. 47 ("Creeden Aff.") ¶ 6.  When the District resumed in-person instruction in 2020-

2021, "there was no need for any teachers to provide remote instruction because the students

were physically back in the classroom."  *Id.* ¶ 5.  No classroom teachers were offered the option

to teach remotely during the 2020-2021 school year.  *See* Giordano Aff. Ex. E (DelMoro

Deposition Transcript ("DelMoro Tr.")) at 34:2-5.

---

[2] Plaintiff disputes Defendants' assertion in paragraph 17 of their Local Civil Rule 56.1 statement without citation to any evidence in the record.  Instead, Plaintiff includes a conclusory legal assertion, contending that "essential duties" is a material issue of fact for a jury.  Pl.'s 56.1 Resp. ¶ 17.  At a minimum, this response constitutes an admission that the District *considered* "maintain[ing] good order and discipline amongst students under one's care and safeguarding their health and safety at all times" to be an essential duty and responsibility for a teacher.

[3] Plaintiff asserts that this fact is "[d]isputed in part as misleading as far as this is a material issue of fact for a jury."  Pl.'s 56.1 Resp. ¶ 18.  Again, however, Plaintiff does not cite to any evidence in the record to contradict Defendants' assertion or proffered evidence.  The Court will treat this response an admission that the District denied requests from teachers to work remotely during the 2020-2021 school year because "teachers needed to be physically present in the classroom to supervise students."  *Id.*

On or about August 19, 2020, Plaintiff requested as an alternative accommodation that he be able to write curriculum, rather than teach students in person.  Pl.'s 56.1 Resp. ¶ 19.[4]  Lloyd testified that the District did not have a need for teachers to do curriculum writing at that time because that work was completed in the summer.  Lloyd Tr. at 64:25-65:14.  Plaintiff notes that he did curriculum writing work during the school year in 2011-2012, ECF No. 43 (Declaration of Gregory Schwartz ("Pl.'s Decl.")) ¶ 5, but the District explains that he did this "while he was awaiting the outcome of a disciplinary hearing," Creeden Aff. ¶10.  In addition, Plaintiff points to personnel action documents dated June 3, 2021 and May 5, 2022 where appointments for curriculum writing positions were listed under the larger heading of "annual appointments."  *See* Pl.'s Decl. ¶¶ 6, 7, Ex. A at 2, Ex. B.  The District maintains that an annual appointment for curriculum writing is not a full-time assignment for a classroom teacher—it is an "extracurricular appointment," which means that teachers assigned to write curriculum also teach in a classroom during the school day and write curriculum outside of the hours of the contractual school day, for which they receive additional school pay.  Creeden Aff. ¶ 11.  Consistent with the District's description, the "annual" curriculum writing positions listed in the June 3, 2021 document provided by Plaintiff are grouped under the subheading of "Extracurricular Appointments," and the "annual" curriculum writing positions listed in both the June 3, 2021 document and the May 5, 2022 document provided by Plaintiff are listed with hourly rates of pay (suggestive of part time work) rather than annual salaries (suggestive of full time positions).  *See* Pl.'s Decl. Ex. A at 2, Ex. B at 1-3.

---

[4] Plaintiff's disputes of the facts asserted in this paragraph and others relate only to a portion of the stated facts, with other portions remaining undisputed.  In such instances, the Court cites to the undisputed portions of Defendants' statements of fact and only discusses the disputed portions as needed.

Plaintiff also requested as an alternative accommodation that he be a "teacher on special assignment"; a "teacher on special assignment" provides resources to classroom teachers to help instruct students. Pl.'s 56.1 Resp. ¶¶ 20, 21. These special assignments were typically appointed in July before the start of school. *Id.* ¶ 21; *see* Lloyd Tr. 51:5-11; *see also* Creeden Aff. ¶ 13. The District asserts that there was no vacancy for a "teacher on special assignment" position at the time Plaintiff requested this accommodation. Creeden Aff. ¶ 13. While Plaintiff makes reference to a particular licensed social studies teacher who has worked on special assignment and highlights his own qualifications for such a position, *see* Pl.'s Decl. ¶ 9, the other employee was appointed to his position in July 2017 and was still in that position as of May 2025, and Plaintiff did not apply for the position when it was available, *see* Creeden Aff. ¶ 13.

On August 20, 2020, Lloyd emailed Plaintiff again to offer accommodations other than remote work, in the form of additional PPE or an unpaid leave of absence for the 2020-2021 school year. Pl.'s 56.1 Resp. ¶ 22.[5] On or about August 27, 2020, the District informed Plaintiff that it was offering unpaid leave on a yearly basis only so that it could get certified teachers to fill the slots for the entire year; Plaintiff also was informed that if school instruction switched to remote during the 2020-2021 school year, he would not be reinstated automatically, but that the District "might be able to adjust" if it still had a vacancy. *See* Defs.' 56.1 Resp. ¶ 72; Pl.'s Decl. Ex. D at 2. Plaintiff ultimately requested and was granted a one-year unpaid leave of absence, with an anticipated return to work date of September 2021. Pl.'s 56.1 Resp. ¶ 23; *see* Giordano Aff. Ex. D (Plaintiff's Deposition Transcript ("Pl.'s Tr.")) at 57:14-58:10 & Ex. 13. Plaintiff

---

[5] Plaintiff purports to dispute this factual assertion, without any citation to evidence in the record, on the ground that "the accommodations offered were not reasonable." Pl.'s 56.1 Resp. ¶ 22. But this is a legal argument, not a dispute about whether the accommodations were offered as stated by Defendants. Accordingly, the Court deems this fact to be admitted.

intended to and did return to work in September of 2021, but he only ended up working for one day. Pl.'s Tr. at 80:20-81:13.

Plaintiff inquired about being able to use his accrued benefits in lieu of an unpaid leave of absence and sought to discuss the possibility of using benefits during his leave of absence. *See* Pl.'s Decl. Ex. D at 2; *see also* Lloyd Tr. at 29:5-30:6 (suggesting that a determination was made that Plaintiff's heart condition was not a basis for him to use his sick time). When asked about Plaintiff's potential use of benefits during his period of leave, Defendants referred to provisions of a collective bargaining agreement. *See* Lloyd Tr. at 29:5-15; DelMoro Tr. at 60:6-63:3.

In late November 2020, the District offered Plaintiff the opportunity to work remotely during a two-week holiday pause when all learning was remote due to an uptick in COVID cases. Pl.'s 56.1 Resp. ¶ 29.[6] Plaintiff decided not to accept this telework offer. *Id.* ¶ 31. In January 2021, the District again offered Plaintiff the opportunity to work remotely, this time for the remainder of the 2020-2021 school year. *Id.* ¶ 32.[7] Plaintiff again declined this offer. *Id.* ¶ 34. On or about August 31, 2021, Plaintiff requested another one-year unpaid leave of absence for the 2021-2022 school year; the District granted the request on September 1, 2021. *Id.* ¶¶ 44, 46. In September 2021, Plaintiff was offered the position of "COVID Teacher" as an alternative to his leave; the responsibilities of a COVID Teacher included overseeing students out sick with COVID; coordinating between the student, parents, and teachers; gathering assignments; ensuring students did their assignments; and providing support to students if there were any

---

[6] Plaintiff offers various citations to "dispute" this asserted fact—largely to explain why he chose not to accept this offer—but there is no dispute that this offer was made. *See* Pl.'s Tr. at 64:18-65:5.

[7] Again, while Plaintiff offers various citations to "dispute" this asserted fact by providing additional context for Plaintiff's decision not to accept the offer, there also is no dispute that this offer was made. *See* Pl.'s Tr. at 69:2-70:1.

issues. *Id.* ¶¶ 47, 48. Plaintiff also rejected this offer. *Id.* ¶ 49. Plaintiff resigned from the

District effective September 1, 2022. *Id.* ¶ 61. Plaintiff testified at his deposition that he

resigned because he "didn't like the way that the [D]istrict treated [him] during this process" and

because he "feared further retaliation from the [D]istrict for standing up for [his] rights."[8] Pl.'s

Tr. at 101:22-102:5.

### B.    DelMoro's Role in Assessing Plaintiff's Accommodation Requests

DelMoro was the District Superintendent from January 2018 until his retirement on

October 7, 2021. Pl.'s 56.1 Resp. ¶ 4. There is a dispute of fact as to what role DelMoro played

in employee accommodation requests. When asked at his deposition who he would consult with

if a teacher made a request to work remotely during the pandemic, DelMoro testified that he

"wouldn't consult. That was in the office of the human resources." DelMoro Tr. at 47:5-10. He

further testified that "human resources" had the final decision making authority regarding

whether to grant a request by a teacher who wanted to work from home "during that timeframe."

*Id.* at 47:22-48:8. Plaintiff, however, highlights Lloyd's testimony, in which she stated that

DelMoro was consulted on accommodation decisions. Lloyd Tr. at 17:13-18:10. Lloyd testified

that regarding Plaintiff specifically, both she and DelMoro were involved in deciding how to

handle his request, *see, e.g., id.* at 20:5-8, 32:6-10, including a determination that Plaintiff's heart

condition was not a basis for him to use his sick time, *see id.* at 29:5-30:6.

## II.    Procedural History

Plaintiff, proceeding *pro se* at the time, commenced this action on February 10, 2023.

ECF No. 1. On March 23, 2023, Defendants filed a pre-motion letter in anticipation of filing a

---

[8] This lawsuit does not include any claims based on any alleged retaliation by the District against Plaintiff.

motion to dismiss.  ECF No. 6.  Plaintiff responded and requested an opportunity to amend the

complaint, *see* ECF No. 7, and that application was granted by the Honorable Kenneth M. Karas,

the district judge to whom the case was assigned at that time, *see* ECF No. 8.

Plaintiff, still proceeding *pro se*, filed the Amended Complaint on April 14, 2023, *see*

ECF No. 9, and Defendants again requested to file a motion to dismiss, *see* ECF No. 10.  The

motion to dismiss was fully briefed as of July 26, 2023, and on March 25, 2024, Judge Karas

issued an opinion and order granting the motion to dismiss in part and denying it in part.  *See*

ECF No. 20.  Defendants filed their answer on April 5, 2024.  *See* ECF No. 21.  Plaintiff's

counsel entered a notice of appearance on April 22, 2024, *see* ECF No. 27, and the case

proceeded to discovery.

Following the completion of discovery, this Court set a briefing schedule for Defendants'

motion for summary judgment.  ECF No. 36.  Defendants filed their motion on February 7, 2025,

ECF No. 39; Plaintiff filed his opposition papers on April 4, 2025, ECF Nos. 42-44; and

Defendants filed their reply submissions on May 2, 2025, ECF Nos. 47-48.

## DISCUSSION

### I.    Summary Judgment Legal Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be

granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Dupree v.

Younger*, 598 U.S. 729, 737 (2023).  A dispute about a material fact is genuine "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party."  *Frost v. N.Y.C.

Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020); *see also Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, a court is

required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sloley v. VanBramer*, 945 F.3d 30, 36 (2d Cir. 2019) (cleaned up); *see also Anderson*, 477 U.S. at 261 n.2. A party cannot overcome summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts" because "conclusory allegations or denials . . . are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (cleaned up). Moreover, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Rogoz v. City of Hartford*, 796 F.3d 236, 245-46 (2d Cir. 2015) (cleaned up). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000) (cleaned up).

## II.    Requirements of Local Civil Rule 56.1

Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York requires a party moving for summary judgment to submit a "separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). The party opposing the motion must include "a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). All such statements by the movant or opponent under Rule 56.1(a) and (b) must be followed by citation to admissible evidence. *See* Local Civ. R. 56.1(d).

Each fact properly set forth in the statement of material facts will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the responding statement.  *See* Local Civil Rule 56.1(c); *Prosper v. Thomson Reuters Inc.*, No. 18-cv-2890 (MKV) (OTW), 2022 WL 814644, at *2 (S.D.N.Y. Mar. 2, 2022) ("[W]here an opposing party does not specifically deny—with citations to supporting evidence—the movant's Rule 56.1 statements, those statements can be deemed admitted."), *adopted by* 2022 WL 814634 (S.D.N.Y. Mar. 17, 2022).

"Additionally, to the extent [a party's Rule] 56.1 statement improperly interjects arguments and/or immaterial facts in response to facts asserted by the opposing party without specifically controverting those facts," the Court may disregard such statements.  *McFarlance v. Harry's Nurses Registry*, No. 17-cv-6360 (PKC), 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020) (cleaned up); *see also Mayagüez S.A. v. Citigroup*, Inc., No. 16-cv-6788 (PGG) (JLC), 2021 WL 1799653, at *7 (S.D.N.Y. Apr. 30, 2021) (recommending that paragraphs lacking factual support or citing to inadmissible evidence "simply be ignored"), *adopted in relevant part by* 2022 WL 901627 (S.D.N.Y. Mar. 25, 2022); *Hill v. Bloomberg L.P.*, No. 14-cv-9809 (CM), 2016 WL 1665599, at *2 (S.D.N.Y. Apr. 20, 2016) (deeming admitted factual assertions made by defendant that were supported by competent evidence in the record and that were not disputed with citations to admissible evidence).

## III.    Analysis

Disability discrimination claims may be brought under a theory of adverse employment action or a theory of failure to provide reasonable accommodation.  *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 457 (S.D.N.Y. 2023) (citing *McMillan v.*

*City of N.Y.*, 711 F.3d 120, 125-26 (2d Cir. 2013)).  Plaintiff brings claims under both theories here, and the Court will address each separate cause of action in turn.

### A.    Disability Discrimination Claim

"Under the ADA [and] NYSHRL . . . it is unlawful to discriminate against a qualified individual on the basis of disability." *Heiden v. N.Y.C. Health & Hosps. Corp.*, No. 20-cv-10288 (LJL), 2023 WL 171888, at *15 (S.D.N.Y. Jan. 11, 2023) (cleaned up).  "Employment discrimination claims under the ADA and NYSHRL on the basis of disability are governed by the burden-shifting framework under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.*; *see Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006) ("A claim of disability discrimination under the [NYSHRL] is governed by the same legal standards as govern federal ADA claims.").  "The same standard applies to disability discrimination claims under the Rehabilitation Act as under the ADA." *Bernheim v. N.Y.C. Dep't of Educ.*, No. 19-cv-9723 (VEC) (JLC), 2021 WL 2619706, at *7 (S.D.N.Y. June 25, 2021), *adopted by* 2021 WL 4198126 (S.D.N.Y. Sept. 15, 2021).

Under the *McDonnell Douglas* framework, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the [adverse action]; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  To establish a prima facie case of disability discrimination under a theory of adverse employment action, a plaintiff must demonstrate that: "'(1) his employer is subject to the [the statute]; (2) he was disabled within the meaning of the [the statute]; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of

his disability.'" *Heiden*, 2023 WL 171888, at *15 (quoting *Sista*, 445 F.3d at 169). "An adverse employment action is 'a materially adverse change in the terms and conditions of employment.' It is 'more disruptive than a mere inconvenience or an alteration of job responsibilities,' and includes changes such as 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.'" *Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 367 (S.D.N.Y. 2018) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).

Defendants' only argument regarding Plaintiff's disability discrimination claim is that Plaintiff "never suffered an adverse employment action," ECF No. 39-16 ("Defs.' Mem.") at 11, and therefore that Plaintiff has failed to establish a prima facie case of disability discrimination. Plaintiff maintains that he suffered two adverse employment actions: "first, the denial of his request to work remotely, and second, Defendants' decision to place him on unpaid leave without the ability to use his accrued benefits." ECF No. 44 ("Pl.'s Mem.") at 13.

### 1.    Denial of Plaintiff's Request to Work Remotely

In August 2020, Plaintiff requested a medical accommodation to be able to teach remotely for the 2020-2021 school year, Pl.'s 56.1 Resp. ¶¶ 8, 11, and on August 14, 2020, the District denied that request, *id.* ¶ 14. Even if the decision not to provide Plaintiff with this requested accommodation had been unreasonable, however, courts have repeatedly held that "a failure to provide a reasonable accommodation in and of itself does not equate to an adverse employment action." *Berger*, 304 F. Supp. 3d at 368; *accord Kirkland-Hudson*, 665 F. Supp. 3d at 457; *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp 378, 406 (E.D.N.Y. 2016); *see Gallagher v. Town of Fairfield*, No. 10-cv-1270 (CFD), 2011 WL 3563160, at *5 (D. Conn.

Aug. 15, 2011).  This same principle applies here—the District's denial of Plaintiff's requested accommodation to teach remotely for the 2020-2021 school year does not constitute an adverse employment action.

"Prior to the COVID-19 pandemic, courts in the Second Circuit generally found that denying an employee's request to work remotely was not an adverse employment action." *Thompson v. Shutterstock, Inc.*, No. 23-cv-4155 (JGLC), 2024 WL 2943813, at *7 (S.D.N.Y. June 10, 2024) (quotation marks omitted).  While certain district courts within the Second Circuit have left open the possibility that the denial of a request to work remotely during "the unique context of the COVID-19 pandemic," *Gayles v. Roswell Park Cancer Inst. Corp.*, No. 22-cv-750 (CR), 2023 WL 6304020, at *6 (W.D.N.Y. Sept. 28, 2023), could constitute an adverse employment action, those cases are distinguishable at this stage of litigation and in light of the record presented on this motion.  In *Gayles*, at the motion to dismiss stage in a case involving allegations of race discrimination, the court concluded that "denying an employee's request to work from home was arguably not a mere inconvenience, particularly when other employees were allowed to do so."  2023 WL 6304020, at *6; *see also id.* at *2 (explaining that certain employees were permitted to work from home, with accommodations provided for employees who were high risk or had school-aged children attending school remotely).

Other courts have alluded to the possibility that a denial of remote work might amount to an adverse employment action, but those claims did not proceed past motions to dismiss.  In *Ham v. ICL Bronx Housing Institute for Community Living*, the court noted in dicta that an adverse action "*could* include [the plaintiff] being denied permission to work from home" in March 2020, but dismissed the plaintiff's complaint on other grounds.  No. 21-cv-3910 (LTS), 2021 WL 2651945, at *2-3 (S.D.N.Y. June 28, 2021) (emphasis added).  And in *Coleman v. New*

*York City Department of Health & Mental Hygiene*, the court, without specifically analyzing whether the refusal to allow the plaintiff to work from home in July 2020 constituted an adverse action, dismissed the claim because the plaintiff failed to allege that the decision was due to his disability.  No. 20-cv-10503 (DLC), 2022 WL 704304, at *5 (S.D.N.Y. Mar. 9, 2022).  Notably, in neither of these cases did the courts actually decide that a denial of a request to work from home during the COVID-19 pandemic was an adverse employment action.

Here, there is no evidence presented in the record that Plaintiff was treated differently than any other similarly situated employee in the District—there is no evidence that any other classroom teacher was allowed to work remotely during the 2020-2021 school year.  Moreover, the denial of Plaintiff's request to work remotely was not a change in the terms of his conditions of employment at all, let alone a material adverse change.  When classroom teachers in the District all taught remotely at the end of the 2019-2020 school year because of the extraordinary circumstances presented by the early months of the pandemic, Plaintiff was able to teach remotely; when classroom teachers were required to return to in-person instruction for the 2020-2021 school year, Plaintiff and his colleagues all were being instructed to return to the manner of classroom teaching that they had always followed.

Accordingly, even though the denial of Plaintiff's accommodation request for remote teaching came during the trying conditions of the COVID-19 pandemic, there are no special circumstances that warrant departure from the general rule that the denial of an accommodation request does not, in itself, amount to an adverse employment action.  Defendants are therefore entitled to summary judgment on the theory that the denial of Plaintiff's request to work remotely constituted an adverse employment action.

### 2. Plaintiff's Inability to Use His Accrued Benefits During the Period of His Unpaid Leave

Plaintiff also claims that the District's refusal to allow him to use his accrued benefits, including his accrued paid sick/leave time, during the period of his unpaid leave constituted an adverse employment action. This theory has been part of Plaintiff's case since the lawsuit was filed. *See* ECF No. 1 at 8-9 (¶ 10); Am. Compl. ¶ 23; *see also* Pl.'s Decl. ¶ 3. Judge Karas recognized this in his decision on Defendants' motion to dismiss the Amended Complaint, highlighting Plaintiff's allegation that he was a "'victim of disability discrimination' because Defendants refused to let him use any accrued benefits during his unpaid leave," ECF No. 20 at 17 (quoting Am. Compl. ¶ 23),[9] and stating specifically that one question to be analyzed was whether Plaintiff's "unpaid leave without the ability to use his accrued benefits constitutes an 'adverse employment action' . . . .," *id.* at 18-19. Plaintiff reiterated in his opposition to the instant motion that his inability to use his accrued benefits during his unpaid leave amounted to an adverse employment action. *See* Pl.'s Mem. at 13-14.

Defendants, in their memorandum of law in support of their motion, quote the language of the Amended Complaint where Plaintiff alleges this adverse action. *See* Defs.' Mem. at 9. Yet inexplicably, in the very next sentence of their brief, and despite Judge Karas's clear explanation of this aspect of Plaintiff's disability discrimination cause of action, Defendants note that Plaintiff does not claim that his resignation was the result of disability discrimination, and then contend that Plaintiff does not allege "that he suffered any other adverse employment action because of his disability." *Id.* Even after Plaintiff restated this adverse action theory in his

---

[9] Interestingly, Judge Karas noted that "Defendants say nothing about this additional claim in their papers" in support of the motion to dismiss. ECF No. 20 at 17-18. As set forth below, Defendants' apparent lack of appreciation of this aspect of Plaintiff's case was repeated at the summary judgment stage.

opposition brief, Defendants failed to address the point in their reply submission; instead, they (mis)directed their response to this point to the question of whether an unpaid leave of absence constitutes a reasonable accommodation. *See* ECF No. 48 ("Defs.' Reply") at 7-8. The only conclusion that the Court can draw from this is that Defendants have not properly sought summary judgment as to Plaintiff's theory that the District's refusal to allow him to use his accrued benefits, including his accrued paid sick/leave time, during the period of his unpaid leave constituted an adverse employment action.

In the absence of a motion for summary judgment as to a particular claim, it is not Plaintiff's obligation to affirmatively put forward any explanation for why that claim should be tried, nor is the Court required to address *sua sponte* whether the claim should proceed. Nevertheless, the Court notes that various courts have held that an employer's refusal to allow an employee to use paid sick time can constitute an adverse employment action. *See Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 429 (E.D.N.Y. 2014) ("the fact that the [p]laintiff was apparently prevented from using his sick leave may constitute an 'adverse employment action'"); *Krishnapillai v. Donahoe*, No. 09-cv-1022 (NGG) (SMG), 2013 WL 5423724, at *13 (E.D.N.Y. Sept. 26, 2013) ("given the significant effects of denying an employee the use of paid sick time or administrative leave during a medical absence, the court finds that this is sufficient to establish an adverse employment action"); *Adams v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 23-cv-5524 (HG), 2025 WL 1677347, at *4-5 (E.D.N.Y. June 13, 2025). And there is at least some evidence in the record that Plaintiff inquired about being able to use his accrued benefits in lieu of an unpaid leave of absence and sought to discuss the possibility of using benefits during his leave of absence. *See* Pl.'s Decl. Ex. D; *see also* Lloyd Tr. at 29:5-30:6 (suggesting that a determination was made that Plaintiff's heart condition was not a basis for him to use his sick

time).[10]  That said, there is also evidence that Defendants believed that they were only following

the provisions of a collective bargaining agreement when discussing and making decisions about

Plaintiff's potential use of benefits during his period of leave.  *See* Lloyd Tr. at 29:5-15;

DelMoro Tr. at 60:3-63:3.  Ultimately, the District's reliance on the collective bargaining

agreement may present a legitimate, non-discriminatory reason for the alleged adverse action.

But because the issue was not adequately presented as a basis for summary judgment, Plaintiff

was not required to come forward with all evidence in support of this theory of adverse action,

nor did he have any reason to offer arguments for why the District's reliance on the collective

bargaining agreement could be considered pretextual.[11]

At bottom, Defendants have not sought summary judgment on Plaintiff's claim that the

District's refusal to allow his use of accrued benefits, including his accrued paid sick/leave time,

during the period of his unpaid leave constituted an adverse employment action taken because of

his disability.  Accordingly, this claim will proceed to trial.

---

[10] In paragraph 73 of Plaintiff's Rule 56.1 Counterstatement, he states that "[o]n or about August 31, 2020, Plaintiff was informed by Ms. Lloyd (after her conversation with Superintendent DelMoro) that he would not be able to utilize his accrued paid sick/leave time," and cites to two deposition transcript excerpts that purportedly support this assertion.  In paragraph 73 of their Response to Plaintiff's Rule 56.1 Counterstatement, Defendants correctly note that "[t]he cited testimony does not support this alleged fact."  While Lloyd's testimony does suggest that a determination was made regarding whether Plaintiff was permitted to use his sick time, there is nothing in this testimony about whether or when Plaintiff was informed of this decision.  It is at least possible that Plaintiff could offer testimony about this purported communication with Lloyd beyond the narrow set of questions and answers from his deposition; Plaintiff may not have felt the need to include such supplemental evidence in his declaration in opposition to the motion for summary judgment because the issue was not adequately raised.

[11] Neither party cites directly to the collective bargaining agreement and the agreement is not included as part of the record on summary judgment.  In addition, neither party provides any arguments using the *McDonnell Douglas* framework beyond simply citing to the familiar standard and discussing the requirements for a prima facie case.

### B.    Failure to Accommodate Claim

Claims brought under the ADA, the NYSHRL, and the Rehabilitation Act for failure to provide a reasonable accommodation are also analyzed under the *McDonnell Douglas* burden shifting framework.  *See Berger*, 304 F. Supp. 3d at 368-69 (specifically referencing claims brought under the ADA and NYSHRL); *Bernheim*, 2021 WL 2619706, at *3 (explaining that a failure to accommodate claim under the Rehabilitation Act is subject to the *McDonnell Douglas* framework).  To establish a prima facie case of disability discrimination under a theory of failure to provide a reasonable accommodation, Plaintiff must show that (1) he is a person with a disability; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.  *See McMillan*, 711 F.3d at 125-26; *Lawtone-Bowles v. City of N.Y.*, No. 17-cv-8024 (WHP), 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019) ("Courts apply the same standard for failure to accommodate cases under the ADA, Rehabilitation Act, [and] NYSHRL . . . .").  If a plaintiff establishes a prima facie case, the burden shifts to the defendant to show that the accommodation would result in undue hardship. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000).

"'Summary judgment is appropriate where a plaintiff fails to identify a facially reasonable accommodation that the defendant refused to provide or when the employer offers an accommodation that is plainly reasonable.'"  *Howard v. United Parcel Serv., Inc.*, 101 F. Supp. 3d 343, 352-53 (S.D.N.Y. 2015) (cleaned up) (quoting *Gronne v. Apple Bank for Sav.*, 1 F. App'x 64, 67 (2d Cir. 2001) (summary order)); *accord Jones-Cruz v. Brookdale Hosp. Med. Ctr.*, No. 19-cv-6910 (MMG), 2025 WL 1617193, at *9 (S.D.N.Y. June 6, 2025).  Reasonable accommodations are "[m]odifications or adjustments . . . that enable an individual with a

disability who is qualified to perform the essential functions of that position; or . . . to enjoy equal benefits and privileges of employment as are enjoyed by [an employer's] other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(ii)-(iii).  The plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment, including the existence of a vacant position for which [he] is qualified."  *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009).

Here, Defendants do not dispute that Plaintiff is a person with a disability and that the District had notice of his disability.  They contend that Plaintiff's requested accommodations would not have allowed him to perform the essential functions of his job as a classroom teacher, or that his requested accommodations were otherwise not facially reasonable.  *See* Defs.' Mem. at 11-15; Defs.' Reply at 2-8.  The Court agrees.

### 1.    Plaintiff's Request to Teach Remotely Would Not Have Enabled Him to Perform the "Essential Functions" of His Job

In order to satisfy the third element of a prima facie claim for failure to provide a reasonable accommodation, Plaintiff must show that he could perform the essential functions of his job without accommodation or that he could do so if provided with a reasonable accommodation and that the District refused to make such an accommodation.  *See Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999).  "'Essential functions' are defined under EEOC regulations to mean the fundamental duties to be performed in the position in question, but not functions that are merely marginal."  *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) (cleaned up).  "In approaching this inquiry, '[a] court must give considerable deference to an employer's judgment regarding what functions are essential for

service in a particular position.'"  *Id.* (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 151 (2d

Cir. 1998)).

The record before the Court makes clear that being present in person in the classroom

was an essential function of the position of a classroom teacher in the District, and that Plaintiff

would not have been able to perform this essential function with his preferred accommodation to

teach remotely during the 2020-2021 school year or any of the other accommodations that he

requested.  The District's job description for a position as a teacher, revised as of December

2017, contains a section titled "ESSENTIAL DUTIES AND RESPONSIBILITIES," which

includes the obligation to "maintain good order and discipline amongst students under one's care

and safeguarding their health and safety at all times."  Creeden Tr. at 79:12-24 & Ex. C2

(capitalization in original); *see* Pl.'s 56.1 Resp. ¶ 17.  At the start of the 2020-2021 school year,

the District decided that it would not allow any teachers to work remotely from home during the

that school year because the District believed that teachers needed to be physically present in the

classroom to supervise students.  *See* Lloyd Tr. at 26:20-28:23; Pl.'s 56.1 Resp. ¶ 18; Creeden

Aff. ¶ 6 ("Teachers, especially at the middle school level, must be physically present in the

classroom when students are present to ensure students are engaged, behaving, and not, for

instance, cheating on an exam, on their cellphone or other device, or in possession of a weapon

or drugs.").  Plaintiff does not cite to anything in the record to contradict Defendants' assertions

or proffered evidence regarding the essential nature of the in-person supervisory role of

classroom teachers.  *See* Pl.'s 56.1 Resp. ¶¶ 17, 18.  There is no indication that any classroom

teachers were offered the option to teach remotely during the 2020-2021 school year, *see*

DelMoro Tr. at 34:2-5, nor does Plaintiff even attempt to argue that a teacher providing

instruction remotely to students who were physically present in a classroom could perform the

supervision and safeguarding responsibilities that were part of the District's job description.  The Court therefore finds that the District has demonstrated that being physically present in the classroom for supervisory purposes was an essential function of the job of a classroom teacher in the District.

Contrary to Plaintiff's suggestion, the question of whether physical presence was an essential function of being a classroom teacher can be determined by a court at summary judgment; indeed, various courts have found, when evaluating failure to accommodate claims at summary judgment, that in-person instruction and/or supervision was an essential function of a classroom teacher position.  *See, e.g.*, *Thomas v. Bridgeport Bd. of Educ.*, No. 20-cv-1487 (VLB), 2022 WL 3646175, at *4 (D. Conn. Aug. 24, 2022) (granting summary judgment to school district where plaintiff teacher sought accommodation to work remotely for the 2020-2021 school year because "in-person instruction [was] an essential function of [the plaintiff's] job as a high school Spanish teacher"); *Ray v. Columbia Brazoria Indep. Sch. Dist.*, No. 23-cv-145 (KPE), 2024 WL 1252362, at *5 (S.D. Tex. Mar. 22, 2024) ("Plaintiff's proposed accommodation of teaching remotely would not allow her to perform essential managerial and disciplinary functions that inherently require that she be physically present in the classroom."), *aff'd*, No. 24-20227, 2025 WL 1219191 (5th Cir. Apr. 28, 2025); *Holmes v. Fulton Cnty. Sch. Dist.*, No. 06-cv-2556 (AJB), 2007 WL 9650147, at *38 (N.D. Ga. Dec. 24, 2007) (recommending summary judgment for defendant school district because "[a]s a teacher, [p]laintiff was to supervise students" and this required her to "be present at specific times when the students are present, indicating that it was an essential function" of the plaintiff's teaching job), *adopted by* 2008 WL 113377674 (N.D. Ga. Mar. 3, 2008); *Sarkisian v. Austin Preparatory Sch.*, 646 F. Supp. 3d 174, 184-185 (D. Mass. 2022) (granting summary judgment because to be

a teacher plaintiff "was required to attend her classes and faculty meetings in person," and "by being unable to attend school in person" plaintiff was unable to "fulfill an essential function of her position").

The fact that remote instruction was necessitated by the extraordinary circumstances of the early stages of the COVID-19 pandemic at the end of the 2019-2020 school year did not permanently change the essential function of a classroom teaching position in the District.  *See Dominguez v. Bd. of Educ. of Yonkers City Sch. Dist.*, No. 23-cv-2460 (NSR), 2024 WL 3427217, at *6 (S.D.N.Y. July 16, 2024) (the fact that plaintiff "could perform his essential job functions while working remotely during the first phase of the COVID-19 pandemic—when leaders, officials, and institutions were in lockdown and just beginning to understand the nature of the outbreak—does not support his assertion that he could continue to perform his essential job functions months or even a year thereafter.  This is particularly true given that the District determined the return to in-person instruction was appropriate."); *see also Thomas*, 2022 WL 3646175, at * 4 ("The fact that an employer temporarily excused performance of one or more essential functions when it closed the workplace and enabled employees to telework for the purpose of protecting their safety from COVID-19, or otherwise chose to permit telework, does not mean that the employer permanently changed a job's essential functions, that telework is always a feasible accommodation, or that it does not pose an undue hardship." (quoting U.S. Equal Emp. Opportunity Comm'n, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (2023), available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws [https://perma.cc/L2LW-55C8] (last visited Oct. 14, 2025)); *Ray*, 2024 WL 1252362, at *5. There is no dispute that the District's schools reopened, and in-person instruction resumed, in

September 2020, Pl.'s 56.1 Resp. ¶ 6, and according to Creeden, "[w]hen the District resumed in person instruction in 2020-2021, there was no need for any teachers to provide remote instruction because the students were physically back in the classroom," Creeden Aff. ¶ 5.[12]

Because being physically present in person to supervise students was an essential function of the job of a classroom teacher in the District, and because Plaintiff's request to teach remotely would not have permitted him to fulfill this essential function, Defendants are entitled to summary judgment on Plaintiff's claim that the District failed to accommodate him by denying his request to teach remotely. *See Weiss v. Nat'l Westminster Bank, PLC*, 993 F.3d 144, 162 (2d Cir. 2021) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim become immaterial and cannot defeat a motion for summary judgment.").

### 2.    Plaintiff's Other Requested Accommodations Were for Positions that Were Not Available

Plaintiff alternatively proposed that he be assigned to a remote role as a curriculum writer, or to work as a "teacher on special assignment." Pl.'s 56.1 Resp. ¶¶ 19-21. "Reassignment to a vacant position" is one potential form of reasonable accommodation that an

---

[12] Notably, when the District determined, at different points during the 2020-2021 school year and early in the 2021-2022 school year, that there were various needs for remote instruction for different periods of time, the District offered Plaintiff the opportunity to teach remotely. *See* Pl.'s 56.1 Resp. ¶¶ 29, 32, 47, 48. Plaintiff declined those accommodation offers. *Id.* ¶¶ 31, 34, 49. Regardless of whether Plaintiff had valid reasons for choosing to decline those offers, the fact that the District made the offers is clear evidence that it continued to engage in the required interactive process with Plaintiff to attempt to find a suitable accommodation. *See Jackan v. N.Y. State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000) ("The ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated."); *see also* Creeden Aff. ¶ 15. In any event, however, "an employer's failure to comply the with the interactive process requirement does not provide the basis for an independent ADA claim." *Torres v. N.Y.C. Dep't of Educ.*, No. 21-1679, 2022 WL 16954360, at *2 (2d Cir. Nov. 16, 2022) (summary order); *see McBride*, 583 F.3d at 100-01.

employer can offer, but "an employer need not reassign an employee if no position is vacant . . . [n]or is the employer obliged to create a new position to accommodate the employee." *Norville*, 196 F.3d at 99; *see Graves*, 457 F.3d at 187 ("the ADA does not require creating a new position for a disabled employee"); *Williams v. Geiger*, 447 F. Supp. 3d 68, 84-85 (S.D.N.Y. 2020). Neither of the positions that Plaintiff requested was available at the time he made his accommodation requests, and therefore the District's decision not to offer these alternatives cannot be the basis for liability for failure to provide a reasonable accommodation.

There is no evidence in the record that a full-time curriculum writing position was available in the District during the 2020-2021 or 2021-2022 school years when Plaintiff was taking his unpaid leaves of absence. The District has explained there was no need for teachers to do curriculum writing during the 2020-2021 school year because that work had been completed over the summer, Lloyd Tr. at 65:3-14, and that when curriculum writing is done during the school year, it is an "extracurricular appointment," which teachers may perform outside of regular school hours for additional pay, Creeden Aff. ¶ 11; *see* Pl.'s Decl. Ex. A at 2 (listing "extracurricular appointments" including curriculum writing). Plaintiff has not put forward any evidence to refute the assertion that curriculum writing for the 2020-2021 school year was completed in the summer of 2020, or to show that any part-time "extracurricular" positions were available in 2020-2021. Moreover, the June 3, 2021 personnel action document, *see* Pl.'s Decl. Ex. A at 2—which presumably concerns appointments for the 2021-2022 school year—is entirely consistent with the District's description of the role as a part-time "extracurricular" position. The fact that Plaintiff engaged in curriculum writing work during the school year in 2011-2012 while he was awaiting the outcome of a disciplinary hearing, *see* Pl.'s Decl. ¶ 5;

Creeden Aff. ¶ 10, has no bearing on whether such a position was available for either of the school years at issue here.

Similarly, there is no evidence in the record that a position as a "teacher on special assignment" was available in the District during the 2020-2021 or 2021-2022 school years.  The fact that another licensed social studies teacher has held a "special assignment" position since 2017, *see* Pl.'s Decl. ¶ 9, in no way indicates that one of these positions was available in either of the relevant school years, and Plaintiff did not apply for the position when it was available, *see* Creeden Aff. ¶ 13.  Indeed, the District has made clear that "[t]here was simply no vacancy for that position."  *Id.* ¶ 14; *see* Lloyd Tr. 51:5-11 (explaining that for the 2020-2021 school year, the District would have hired and appointed any teachers on special assignment in July 2020).[13]

Because Plaintiff has not demonstrated that there was a relevant vacancy, and because the District was not required to create a new position for Plaintiff as an accommodation, Defendants are entitled to summary judgment on the theory that the District failed to accommodate Plaintiff by providing him with one of these positions.

* * * * * * * * * *

For all of these reasons, Plaintiff has failed to identify a facially reasonable accommodation that Defendants refused to provide, and summary judgment for Defendants on Plaintiff's claim for failure to provide a reasonable accommodation is therefore warranted.  *See, e.g.*, *Jones-Cruz*, 2025 WL 1617193, at *9; *Smith v. AECOM Tishman*, No. 21-cv-2915 (AS),

---

[13] There is also no evidence that the position of COVID Teacher—which Plaintiff was offered, and which he declined, in September 2021, Pl.'s 56.1 Resp. ¶¶ 47, 48, 49—was available in September 2020.

2025 WL 691662, at *6 (S.D.N.Y. Mar. 4, 2025); *McMiller v. Precision Metal Prods., Inc.*, No. 13-cv-577 (VAB), 2015 WL 4886460, at *12 (D. Conn. Aug. 17, 2015).[14]

### C.    NYSHRL Claim Against the District

Defendants contend that there can be no claim under the NYSHRL against the District because under the NYSHRL, "an employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it." Defs.' Mem. at 15 (quoting *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 88 (E.D.N.Y. 2020)). "Condonation, which may sufficiently implicate an employer in the discriminatory acts of its employee to constitute a basis for employer liability under the [NYSHRL], contemplates a knowing, after-the-fact forgiveness or acceptance of an offense." *Antoine*, 489 F. Supp. 3d at 88 (cleaned up). "Alternatively, an employer's calculated inaction in response to discriminatory conduct, may as readily as affirmative conduct, indicate condonation." *Id.* (cleaned up).

---

[14] Because Plaintiff has failed to identify a reasonable accommodation that the District did not provide, it is not necessary to reach the separate question of whether the accommodation of an unpaid leave of absence was itself a reasonable accommodation. As Judge Karas discussed in the opinion and order on Defendants' motion to dismiss, the question of whether a school-year-long unpaid leave of absence can constitute a reasonable accommodation has not been definitively answered in the Second Circuit. *See* ECF No. 20 at 13-14. This analysis is further complicated by the fact that as part of the interactive process with the District, Plaintiff actually *requested* (and was granted) the one-year unpaid leave of absence for both the 2020-2021 and 2021-2022 school years. *See* Pl.'s 56.1 Resp. ¶¶ 23, 44, 46.

That said, the Court observes that the record here—where no other reasonable accommodation had been identified; where the unpaid leave was for a fixed period of time; where both Plaintiff and Defendant expressed the intention of having Plaintiff return to work after the leave period; and where a global pandemic created understandable and extraordinary anxiety and concern, particularly for individuals with certain health conditions—seems to present a compelling case for finding such an accommodation to be reasonable. *See Bernheim*, 2021 WL 2619706, at *12 ("several courts in this Circuit have found that intermittent leave can constitute a reasonable accommodation in certain contexts").

While it is true that "vicarious liability is not available [under the NYSHRL] in cases involving discrimination," *Charlier v. 21 Astor Place Condo.*, No. 22-cv-05903 (LTS), 2024 WL 4026253, at *6-7 (S.D.N.Y. Sept. 3, 2024), New York courts have held that "the corporate employer may be held directly liable for acts of discrimination perpetrated by a high-level managerial employee," *Father Belle Cmty. Ctr. v. N.Y.S. Div. of Hum. Rts.*, 221 A.D.2d 44, 54 (4th Dep't 1996).  As the Appellate Division explained,

> Under New York law, where the complainant is harassed by a low-level supervisor or a co-employee, the complainant is required to establish only that upper-level supervisors had knowledge of the conduct and ignored it; if so, the harassment will be imputed to the corporate employer and will result in imposition of direct liability. However, there is no opportunity to make a complaint to upper-level management where the harasser is the highest ranking supervisor . . . .  Further, if an upper-level supervisor's knowledge of harassing conduct can be imputed to the corporate employer for the purpose of establishing acquiescence or condonation as a basis for imposing direct liability, there is no logical reason why the harassing conduct of a top manager cannot be imputed to the employer as well.

*Id.* (internal citations omitted); *see Castillo v. Isakov*, No. 22-cv-6888 (LJL), 2023 WL 6664552, at *6 (S.D.N.Y. Oct. 12, 2023) ("where it is an upper-level supervisor who is responsible for the discrimination, liability is automatically imputed to the corporation, as the involvement of an upper-level supervisor establishes the corporation's acquiescence or condonation").

Defendants insist that because there are no allegations that the "school board" was aware of the alleged discriminatory conduct and condoned it, the District cannot be liable.  Defs.' Mem. at 15.  Contrary to the one case that they cite in support of this argument, however, neither the school board nor any individual school board members are defendants in this lawsuit, and because the alleged misconduct in this case involves some of the most senior employees of the District, it was not necessary that Plaintiff also take an additional step of notifying the school board in order to potentially have a viable claim against the District.  *See Father Belle Cmty.*

*Ctr.*, 221 A.D.2d at 54 ("requiring the complainant . . . to notify the corporate directors is unfair and impractical.  Corporate directors typically are not present at the workplace and necessarily delegate their responsibilities to upper-level managerial employees.  Thus, it would be unrealistic to require the complainant to 'go over the head' of an abusive chief executive.").

The Court already has explained why Plaintiff has failed to establish the necessary elements of his prima facie case for disability discrimination based on a failure to accommodate theory, so there is no claim against the District under the NYSHRL on that basis.  There also is no viable NYSHRL claim against the District based on the claim that the denial of Plaintiff's accommodation requests constituted an adverse employment action.

The one claim that is proceeding—*i.e.*, that the District's refusal to allow Plaintiff to use accrued benefits, including his accrued paid sick/leave time, during the period of his unpaid leave constituted an adverse employment action taken because of his disability—can proceed against the District under the NYSHRL as well.  The individuals allegedly involved in the District's purportedly discriminatory decision regarding Plaintiff's use of his benefits were DelMoro and Lloyd, both upper-level supervisors whose involvement can establish an employer's acquiescence or condonation for purposes of the NYSHRL.  *See Father Belle Cmty. Ctr.*, 221 A.D.2d at 54; *Castillo*, 2023 WL 6664552, at *6.  Accordingly, the NYSHRL claim against the District can go forward on this limited basis.

### D.    NYSHRL Claim Against DelMoro

The only claims remaining against DelMoro are under the NYSHRL.  *See* ECF No. 20 at 2.[15]  The NYSHRL "is, in essence, an employment discrimination statute, not an individual liability statute, even though individuals can be liable under some circumstances."  *Mosier v. State Univ. of N.Y.*, No.18-cv-6539 (SJF) (AKT), 2020 WL 42830, at *11 (E.D.N.Y. Jan. 2, 2020) (cleaned up).  "Importantly, since it is the employer's participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting, a plaintiff cannot prevail against [an individual] on [his or her] state claims unless [he or she] can first establish the liability of [his or her employer]."  *Pellegrini v. Sovereign Hotels, Inc.,* 740 F. Supp. 2d 344, 356 (N.D.N.Y. 2010) (cleaned up).

Accordingly, because Plaintiff cannot establish the necessary elements of his prima facie case for disability discrimination based on a failure to accommodate theory against the District, that claim must be dismissed against DelMoro individually as well.  Plaintiffs individual claim against DelMoro also must be dismissed to the extent it is predicated on the theory that the denial of his accommodation requests amounted to an adverse employment action.

But just as the claim regarding the District's refusal to allow Plaintiff to use accrued benefits during the period of his unpaid leave can move forward against the District, it can move forward against DelMoro individually as well.  There is plainly a material dispute of fact as to whether DelMoro was involved with Lloyd in decision-making regarding Plaintiff, including

---

[15] White Judge Karas only specifically referred to dismissing the claim against DelMoro under the ADA, in doing so he cited a case that makes clear that it is well-established that there is no individual liability under either the ADA or the Rehabilitation Act.  *See* ECF No. 20 at 2. Appropriately, Plaintiff has not attempted to argue that there is any remaining claim against DelMoro under the Rehabilitation Act.

decision-making regarding the use of his accrued paid sick/leave time, and as such, summary judgment on this one claim is not appropriate.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (ECF No. 39) is GRANTED IN PART AND DENIED IN PART.

Defendants' summary judgment motion is granted as to Plaintiff's claims for disability discrimination based on a failure to accommodate theory, and as to Plaintiff's theory that the denial of his accommodation requests constituted an adverse employment action. The motion is denied as to Plaintiff's claim that the District's refusal to allow him to use accrued benefits during his unpaid leave of absence was an adverse employment action that he suffered because of his disability.

An in-person conference is scheduled for October 30, 2025 at 11:00 a.m. in Courtroom 250 in the White Plains federal courthouse. In advance of the conference, counsel are hereby directed to meet and confer to discuss potential dates for a trial on the remaining claims between January and April 2026, and to discuss whether they and their clients believe that a referral to the Court's Mediation Program would be worthwhile. The Court expects the parties to be prepared to discuss both of these matters at the conference.

Dated: October 15, 2025
      White Plains, New York

**SO ORDERED.**

ANDREW E. KRAUSE
United States Magistrate Judge